MARY WOHLFAHRT, as Administratrix, etc., Respondent, *v.* CHARLES A. BECKERT, Appellant.

Where, upon the sale by a druggist of a poisonous medicine he, fully and fairly warns the purchaser of its character, and gives accurate information and directions as to the quantity which may be safely taken, and the customer is injured or killed by taking an overdose in disregard of such direction, the druggist is not liable for negligence or tort, simply because of an omission on his part to put a label marked "poison" upon the "parcel in which the sale is made" as required by the statute. (2 R. S. 694, § 23.) The customer may not disregard the warning and direction and charge the consequences of his own negligence or recklessness upon the druggist.

*Wohlfahrt* v. *Beckert* (27 Hun, 74), in this respect overruled.

In an action against a druggist for alleged negligence in the sale of a poisonous medicine without attaching a label marked poison, thus causing the death of W., plaintiff's intestate, it appeared, that W., having been advised to take a comparatively harmless preparation known as "black draught," and that he could take a small wine glass thereof, which he could procure at any drug store for ten cents, went to defendant's drug store, where, according to the testimony of defendant's clerk, he asked

---

defendant for ten cents worth of "black drops;" defendant told him that was a poison, and advised him to take another preparation ; this W. refused, and defendant thereupon directed the witness to give him black drops, but informed him that he should only take ten or twelve drops for a dose ; witness gave W. two drachms of the medicine asked for in a vial upon which was a label marked "black drops ; " the label did not have the word "poison" thereon. W. took nearly the whole of the contents of the vial and died in consequence. *Held,* that if the testimony of the clerk was to be taken as the truth, a verdict for defendant was properly directed ; but that the jury were at liberty, under the circumstances, to disbelieve such testimony, as the witness was interested, having violated the law by omitting the prescribed label; and that, therefore, the question as to whether the warning testified to was in fact given was one for the jury, and the direction was error.

(Argued April 24, 1883 ; decided June 5, 1883.)

APPEAL from an order of the General Term of the Supreme Court, in the second judicial department, made February 15, 1882, which sustained plaintiff's exceptions and granted a new trial ; a verdict having been rendered in favor of defendant by the direction of the court, on trial, and exceptions having been ordered to be heard at first instance at General Term. · (Reported below, 27 Hun, 74.)

This action was brought to recover damages for alleged negligence in causing the death of Matthias Wohlfahrt, plaintiff's intestate.

The evidence on the trial was to this effect : Wohlfahrt being temporarily troubled with diarrhœa or some bowel complaint, was informed by one Silberstein, a peddler, that a preparation known as "black draught," a vegetable non-poisonous mixture, of which he could take a small glassful, would relieve him, and that he could get ten cents worth of this "black draught" in any drug store. Wohlfahrt went to defendant's drug store, and according to the testimony of defendant's clerk what occurred there was as follows : At the door Wohlfahrt met the defendant, and said to him, "I wish to buy black drops." Defendant said, "For what do you wish black drops ?" Wohlfahrt replied, "I want it for cramps in my stomach." "Why, that is a poison," defendant said, "I would advise you to take cholera drops for your sickness." "No," said Wohl-

fahrt, " I want black drops." " Well," said defendant, " that is a poison, and you cannot take more than ten or twelve drops of that medicine for a dose." " Yes," said Wohlfahrt. Whereupon defendant turned to the witness and told him to give Wohlfahrt a diluted preparation of the medicine called for. The witness gave deceased two drachms in a vial, simply labeled " black drops." The quantity to be taken at a dose was not written nor was the word " poison " written or printed upon the label, nor was any word or phrase to indicate the poisonous character of the drug. Upon his return home, the wife of deceased took the medicine, poured it in a little glass and gave it to him; he took all of it with the exception of a few drops and he died within a few hours thereafter.

*William C. De Witt* for appellant. Where the facts are uncontroverted, the question of negligence is one of law. (*Gonzales* v. *N. Y. & H. R. R. R. Co.*, 38 N. Y. 440; *Clarke* v. *Union Ferry Co.*, 35 id. 48; *Morrison* v. *Erie R. R. Co.*, 56 id. 302; *Riceman* v. *Havemeyer*, 84 id. 647; *Tonawanda R. R. Co.* v. *Meyer*, 5 Denio, 255; 56 N. Y. 630; 49 id. 177; 36 id. 153.) Not every violation of a criminal provision in the statutes gives a right of civil action *per se* against the wrong-doer, and a person may be punishable criminally for having violated the law and still not be liable civilly to one injured by such violation. (*Connelly* v. *N. Y. C. & H. R. R. R. Co.*, 88 N. Y. 346; *Pakalinski* v. *N. Y. C. & H. R. R. R. Co.*, 82 id. 424; *Riceman* v. *Havemeyer*, 84 id. 647; *Wilds* v. *H. R. R. R. Co.*, 24 id. 430; 34 id. 9; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 id. 330.)

*Samuel Greenbaum* for respondent. All the inferences that the jury might properly have drawn from all the facts are to be held in favor of plaintiff. (*Sheridan* v. *B. C. & N. R. R. Co.*, 36 N. Y. 39.) Defendant having sold a most virulent poison, in violation of the express provisions of law, was guilty of the grossest negligence and of a wrongful act. (2 Statutes

at Large, 717; 2 R. S. 662, § 19; *Thomas* v. *Winchester*, 6 N. Y. 409; *Regina* v. *Swindall*, 2 C. & K. 232–3; id. 368, 571; *Loop* v. *Litchfield*, 42 N. Y. 358; *Wellington* v. *Downer Kerosene Oil Co.*, 104 Mass. 64; *Norton* v. *Sewell*, 106 id. 143; *Binford* v. *Johnston*, 26 Alb. L. J. 353; *Ernst* v. *H. R. R. R. Co.*, 35 N. Y. 9; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 64 id. 532; *Renwick* v. *N. Y. C. R. R. Co.*, 36 id. 132; *Gorton* v. *Erie R. R. Co.*, 45 id. 660; *Knupfle* v. *Knickerbocker Ice Co.*, 84 id. 488; *Congreve* v. *Smith*, 18 id. 79; *Creed* v. *Hartman*, 29 id. 591; *Davenport* v. *Ruckman*, 37 id. 568; *Clifford* v. *Dam*, 81 id. 56.) It is a matter of right in the plaintiff to have the issue of negligence submitted to the jury when it depends upon conflicting evidence or on inferences to be drawn from circumstances in regard to which there is room for a difference of opinion among intelligent men. (*Payne* v. *T. & B. R. R. Co.*, 83 N. Y. 574; *Wolfkiel* v. *Sixth Ave. R. R.*, 38 id. 49; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 451; *Massoth* v. *D. & H. C. Co.*, 64 id. 524; *Sewell* v. *City of Cohoes*, 75 id. 53; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 518; *Hart* v. *H. R. Bridge Co.*, 80 id. 622; *Ernst* v. *H. R. Bridge Co.*, 35 id. 9; *Hume* v. *York*, 47 id. 639; *Miner* v. *S. S. Co.*, 50 id. 23; *Totten* v. *Phipps*, 52 id. 354; *Keating* v. *N. Y. C.*, etc., 49 id. 673; *Barton* v. *Same*, 56 id. 660.) Although one or more witnesses may have testified to a certain state of facts, without being contradicted by other witnesses, it is nevertheless for the jury to determine, from all the facts, circumstances and inferences of the case, whether such witnesses are to be believed or not. (*Stillwell* v. *Carpenter*, 2 Abb. N. C. 238; *Nicholson* v. *Connor*, 8 Daly, 212; *Elwood* v. *W. U. Tel. Co.*, 45 N. Y. 553; *Kavanagh* v. *Wilson*, 70 id. 177; *Gildersleeve* v. *Landon*, 73 id. 609; *Ernst* v. *H. R. R. R. Co.*, 35 id. 28.) The defendant having been guilty of a wrongful act, of gross negligence, the contributory negligence of the deceased is no bar, and constitutes no defense to an action for damages. (*Kenyon* v. *N. Y. C. & H. R. R. R. Co.*, 5 Hun, 479; *Clifford* v. *Dam*, 81 N. Y. 56–57; *Lannen* v. *Alb. G. L. Co.*, 44 id. 439; *Nashville R. R. Co.* v. *Trowlin*, 1 Lea, 523; *R. R.*

*Co.* v. *Wilke,* 11 Heisk. 383 ; *Rowell* v. *R. R. Co.,* 57 N. H. 132 ; *Ernst* v. *Hud. R. R. R. Co.,* 35 id. 28.) The question of contributive negligence under any circumstances was for the jury. (*Massoth* v. *D. & H. C. Co.,* 64 N. Y. 524; *Poler* v. *N. Y. C. & H. R. R. R. Co.,* 16 id. 476; *McIntyre* v. *Same,* 37 id. 287 ; *O'Mara* v. *H. R. R. R. Co.,* 38 id. 445 ; *Mangan* v. *B. R. R. Co.,* id. 455 ; *Wolkfiel* v. *Sixth Ave. R. R. Co.,* id. 49 ; *Filer* v. *N. Y. C.,* etc., 49 id. 47; *Keating* v. *Same,* id. 673 ; *Eaton* v. *Erie R. R. Co.,* 51 id. 666 ; *Delafield* v. *Union Ferry Co.,* id. 671 ; *Hackford* v. *N. Y. C. & H. R. R. R. Co.,* 53 id. 654; *Spooner* v. *B'klyn City R. R.,* 54 id. 230 ; *Morrison* v. *N. Y. C.,* etc., 63 id. 643 ; *Hays* v. *Miller,* 70 id. 112; *Dyer* v. *Erie R. R. Co.,* 71 id. 228; *Dolan* v. *D. C. Co.,* id. 285 ; *Rexter* v. *Starin,* 73 id. 601 ; *Harris* v. *Velrelhoer,* 75 id. 169 ; *Terry* v. *Jewett,* 78 id. 338 ; *Kellogg* v. *N. Y. C.,* etc., 77 id. 72 ; *Stackus* v. *Same,* 79 id. 469 ; *Burckhardt* v. *R. & S. R. R. Co.,* 1 Abb. Dec. 131.)

Finch, J. Whether this case should have been submitted to the jury depends upon the inquiry whether the testimony of the defendant's clerk is to be taken as the truth of the transaction, or may be questioned or doubted. If he is to be believed the druggist who sold the poison was guilty of no wrong or negligence toward the deceased, for he warned him that the "black drops" asked for was a strong poison, of which he should only take ten or twelve drops for a dose. Notwithstanding the warning, he took probably ten times the prescribed quantity, in reliance upon the previous statement of the peddler, Silberstein, that he had taken half a glass of what he called "black draught," and that it had cured him. On such a state of facts a verdict against the defendant would not be justified. Although no label marked "poison" was put upon the phial, and granting that by such omission the defendant was guilty of a misdemeanor and liable to the penalty of the criminal law, still that fact does not make him answerable to the customer injured, or his representative in case of his death, for either a negligent or wrongful act when toward that customer

he was guilty of neither, since he fairly and fully warned him of all, and more than could have been made known by the authorized label. The statute requires the ringing of the bell or sounding of the whistle by an engine approaching a railroad crossing, but one who sees the train coming has all the notice and warning which these signals could give, and though they are omitted, takes the risk of the danger which he sees and knows if he attempts to cross in front of the train. (*Paka-linsky* v. *N. Y. C. & H. R. R. R.*, 82 N. Y. 424; *Connelly* v. *N. Y. C. & H. R. R. R.*, 88 id. 346.) So here, if the warning was in truth given, if the deceased was cautioned that the medicine sold was a strong poison and but ten or twelve drops must be taken, he had all the knowledge and all the warning that the label could have given, and could not disregard it and then charge the consequences of his own negligent and reckless act upon the seller of the poison. But if no such warning was in fact given, its omission was negligence, for the results of which the vendor was liable both at common law and by force of the statute. (*Thomas* v. *Winchester*, 6 N. Y. 409; *Loop* v. *Litchfield*, 42 id. 358; 1 Am. Rep. 543; *Wellington* v. *Downer Ker. Oil Co.*, 104 Mass. 64; 3 R. S., part 4, chap. 1, title 6, § 25.) By the statute it is made a misdemeanor for any person to sell "any arsenic, corrosive sublimate, prussic acid, or any other substance or liquid usually denominated poisonous, without having the word "poison" written or printed upon a label attached to the phial, box or parcel in which the same is so sold." The liquid sold to the deceased was in fact a poison, and death resulted from taking a trifle less than the quantity sold. The evidence showed that the black drops in both forms of the preparation was "deadly," and that it was usually denominated poisonous is to be inferred both from its well-known character and from the evidence given by the pharmacist who said that, unless selling upon the prescription of a physician, he would mark upon the medicine the dose, or label it poison, or do both. Indeed, the learned counsel of the defendant concedes all this, for he says, "if any third party unacquainted with the real contents of the phial had been injured, then an action would lie against

this defendant," and the defense interposed rests wholly upon the fact asserted, that full warning of the poisonous nature of the liquid was given, and the quantity which might be safely taken was stated to the purchaser. So that the question here whether the nonsuit ordered by the trial judge can be sustained or not turns solely upon the inquiry whether the warning was in fact given, and that again upon the question whether the jury would have been at liberty to disbelieve the evidence of the defendant's clerk. His story in itself was not improbable, so far as the defendant's action was concerned. A druggist selling for ten cents a medicine which was a poison, and in a quantity capable of killing an incautious or ignorant purchaser, would be quite likely, we should suppose, to give the brief information needed to protect his customer and shield himself from grave danger and disaster. Nor was the witness impeached by what are called the contradictions in his testimony drawn out on cross-examination. They were very slight and utterly immaterial. But two facts disclosed by the proofs opened his testimony to doubt and possible disbelief. He was an interested witness. He had violated the law by omitting the label required. The medicine he delivered had killed its victim. The consequences of the act upon himself, upon his future, and upon his employer were certain to be disastrous in the absence of explanation or justification. The motive to avert the danger, even by falsehood, was plain and powerful. The label was not on the phial. No such defense was possible. The only other one was to swear to the verbal warning given to the customer. The witness, therefore, stood in a position such as to provoke suspicion, arouse doubt, and justify watchful and rigid criticism. And then joined to that came the facts of the conduct of the deceased. If the evidence was true he took the poison in a deadly dose and from the hands of his wife, with knowledge that it was a poison and that he was largely exceeding the prescribed quantity. Nothing in the case permits us to imagine that he did so purposely and intended suicide. What can be said and all that can be said is that he relied upon the peddler's story of his experience in taking without injury one-

half of a glass rather than upon the druggist's warning that the medicine was a strong poison. That is possible, but has about it some doubtful elements. A man even of ordinary intelligence and very moderate prudence, who had been told by a friend that he had been cured by a particular medicine, taken in the quantity of half a glass, and thereupon went to a druggist, who was also a doctor, to purchase it, and was then distinctly told that the medicine was a poison, and but ten or twelve drops must be taken, would naturally be somewhat startled. We should expect him to speak and manifest surprise, or at least seek the truth out of the contradictions. But this customer manifested none; he showed no curiosity; he asked no natural question; he did not say that a friend had taken ten times the doctor's dose with safety, and ask who was right or who was wrong, or if there was not somewhere a mistake as to the medicine. On the contrary, with the warning ringing in his ears, he quietly receives the medicine without surprise, allows his wife to pour nearly the whole contents into a spoon, and says not a word to her of the information he has received, does not tell her what the doctor said, does not heed his warning, relies upon the advice of an unskilled peddler, discarding that of the druggist and physician, and takes the fatal dose. It cannot be denied that this conduct matches naturally and exactly the line of action we should expect if no warning had been in fact given, and does not appear so perfectly natural when confronted with the opposite theory. It tends, therefore, to throw doubt upon it, and to make one hesitate as to the truth, and when combined with the palpable interest of the clerk to shield himself and his employer, makes a case in which there is a possibility of different and debatable inferences from the evidence given, and so develops a question of fact, rather than one of law. In *Elwood* v. *Western Union Tel. Co.* (45 N. Y. 553; 6 Am. Rep. 140), it was said that the rule that where unimpeached witnesses testify positively to a fact and are uncontradicted, their testimony must be credited, is subject to many qualifications, and among them this, that the interest of the witness may affect his credibility, and it was added upon the facts of

that case : " such evidence as there is proceeds wholly from parties having an important interest in the question. Each of them, if guilty of the negligent act, would have the strongest motive to deny it, as the admission would subject him or her to severe responsibility for the consequences. This is a controlling consideration in determining whether the statements of these witnesses should be taken as conclusive." To a similar effect are other cases. (*Kavanagh* v. *Wilson,* 70 N. Y. 177; *Gildersleeve* v. *Landon,* 73 id. 609.) The General Term were therefore, right in saying that the case should have been submitted to the jury.

Their judgment should be affirmed and judgment absolute rendered in favor of the plaintiff upon the stipulation, with costs.

All concur.

Order affirmed and judgment accordingly.