Pryor, J.
In limine the respondent urges a point which, if well taken, disposes of the case adversely to the appellant. The contention is that the answer presents no defense to the action, and that, therefore, the exceptions, to evidence relied on for reversal are ineffectual to the purpose.
It seems, indeed, that no material allegation of the-complaint is controverted; but then, at the trial, respondent made no motion for- judgment on the pleadings-treated the answer as sufficient; recognized the necessity of proving her case ; gave in her evidence ; and, without objection, allowed appellant to enter on her defense. In-this situation we are bound to consider the defense as disclosed by the evidence (Knapp v. Simon, 96 N. Y. 284).
The action is by one sister against another, as administratrix, to recover for board of their mother; and a third sister was the sole witness to the cause of action. The-presumption of law is that, in providing shelter and food for her aged mother, the plaintiff was prompted, npt by a mercenary motive, but by an impulse of affection and a dictate of filial duty; and that, consequently, the service was. rendered as a gratuity. The presumption, however, was-overcome if the witness sister was to be believed, for she swore to a promise by the deceased mother to pay the plaintiff sister $15 a month. But was her testimony-credible ? That was for determination by the tribunal below, and we should not disturb its decision but for an error bearing essentially on the question in controversy.
Being the solitary witness for the plaintiff, and giving: testimony which became, by the decease of the mother, incapable of contradiction, Mrs. Francois challenged the-severest scrutiny as to the credibility of her evidence. Accordingly, on cross-examination, she was asked : “ Did you have any conversation with your sister (the plaintiff); in regard to bringing this suit ?” to which she answered, “ No, sir.” She was then asked : “ Will you swear that you did not tell this party here that you had instructed *209 the plaintiff to bring this suit, even if it was necessary to swallow up the whole estate in litigation ?” to which question she replied, “ I swear I never had such a conversation.” To a witness for the defense counsel propounded the inquiry: “ Do you remember having a conversation with Mrs. Francois?” the answer being “Yes.” Counsel then asked: “State what the conversation was?” On objection by the plaintiff, the question was excluded. Counsel then inquired : “ Did you hear the testimony of Mrs. Francois a few minutes ago, in which she stated that she never had instructed the plaintiff to bring this suit ?” The witness answered, “ Yes, sir.” Counsel then asked: “Is that true?” Plaintiff objecting on the ground that “ it is collateral matter, drawn out by defendant’s counsel;” the evidence was excluded, and defendant excepted.
The rule is familiar that an answer to cross-examination touching collateral matter is conclusive on the party eliciting it (Carpenter v. Ward, 30 N. Y. 243). But, was the evidence drawn from plaintiff’s witness by the defendant collateral in the sense that it admitted of no contradiction ?
In the decision of the point, we must observe the distinction between evidence affecting the general credit of a witness, and evidence affecting his particular credit in the action. Evidence impeaching the general credit of a witness, consists exclusively of testimony to his character or reputation, and if, upon cross-examination, he be questioned as to a particular fact, however damaging to that character and reputation, but not bearing upon his conduct in the action, or his relation to the cause or the parties, the adversary is concluded by his answer. Otherwise however as to evidence touching the particular credit in the cause of a witness. For impeaching that credit he may be questioned, on cross-examination, as to any fact that tends to convict him of partiality between- the litigants or interest in the litigation ; and if he deny the fact it may be proved against his contradiction. Thus, in Rex *210 v. Yewin (2 Campb. 638), a witness for the prosecution denied, on cross-examination, that he had been accused of robbing the defendant, and had said that he would be revenged on him and would even fix him in jail. Evidence to contradict him as to the charge of robbing was excluded, because going to his general credit only; but evidence as to his threat was admitted, because affecting his particular credit in the action. So in Starks v. People (5 Denio, 106), proof was allowed of a declaration by a witness for the prosecution that a particular locality was a good place to kill the defendant, although he had denied the statement on cross-examination. In Morgan v. Frees (15 Barb. 352), a witness for the plaintiff denied on cross-examination that he had attempted to suborn testimony for the defendant ; but, nevertheless, the fact was admitted as evidence impeaching his particular credit. In Bemis v. Kyle (5 Abb. Pr. N. S. 232), plaintiff’s witness swore, on cross-examination, to a promise by plaintiff to reward him, and it was held error to exclude evidence to contradict the testimony. In Newton v. Harris (6 N. Y. 345), it was ruled that “ facts which bear directly on the credibility of witnesses are material to the issue,” and that “ when, on cross-examination, a witness denies statements indicative of hostility to a party, they may be proved by other witnesses ” (Prescott v. Tousey, 50 Super. Ct. 12 ; Teets v. Village, 106 N. Y., 651; Cowen and Hill’s Notes to Phillips on Ev. 581, 596; Schultz v. Third Ave. R. R. Co., 89 N. Y. 243).
The rejected evidence went to show such an intensity of feeling and interest in the action on the part of the witness, that she urged its prosecution although it should swallow up the estate of which she was an heir ; and hence was clearly competent in impeachment of her particular credit in the cause. The witness being the sole support of plaintiff’s case—obviously of questionable merit—the error in the exclusion of the evidence is of such mani *211 fest prejudice as to be fatal to the judgment (Teets v. Village, 106 N. Y. 651).
The reversal of the judgment nesessarily involves a reversal of the order.
Daly, Ch. J., and Bischoff, J., concurred. Judgment and order reversed, and new trial; costs to abide the event.
Note on the Value of the Testimony of Interested Witnesses.
The abrogation of the common law incompetency of interested persons as witnesses has not deprived the distinction between interested and disinterested witnesses of practical importance ; and in the tendency to refinement in the rules respecting what questions are for the court and what for the jury, the distinction is presenting itself in some new .aspects.
The statute declaring the i-ncompetency of a party or interested witness to testify to personal transactions and communications with the deceased in certain cases (Code Civ. Pro. § 829), preserves the common law disqualification in a certain class of cases, making the question what is an <l interest in the event ” such as to disqualify, a matter of ■frequent importance under that section.
In another class of cases the distinction between an interested and a disinterested witness is of much importance in reference to the weight of testimony, and therefore in reference to the choice of evidence for the trial ; because it affects vitally the power of the court to direct a verdict and the right of a party to go to the jury. (See p. 201 of this vol.)
In a third class of cases, of which the decision in the text is an illustration, the subject is important on the question whether we can contradict answers given on cross-examination.
The following brief exposition of the present practice, from notes of the writer’s lectures in the Post-Graduate Course in the New York University Law School, may be of interest to the practitioner.
The phrase “ interested in the event ” in this section is construed as having the same meaning as the like phrase in the common law rule that a person interested in the event of the action is not competent as a witness.
Code Civ. Pro. § 829 ; who disqualified.] The expression “ interested in the event ” in section 829 ; was not intended to *212 enlarge the class to be excluded beyond that which the common law excluded for interest; and where the witness is-not directly interested in the recovery, and the judgment to> be recovered would not be evidence for or against such witness, there is no ground for excluding the testimony. Held,. therefore, in an action of ejectment, that the plaintiff’s mother was competent to testify to her marriage with defendant’s-ancestor prior to plaintiff’s birth, for the purpose of establishing plaintiff’s title as heir-at-law, although ,the fact of such marriage would entitle the witness to dower in the property. 1891, Eisenlord v. Clum, 126 N. Y. 552 ; s. c., 38. State Rep. 446.
—who disqualified,.] One of two joint and several makers-of a promissory note, although not a person through whom the payee derives title, is interested in establishing the liability of his co-maker and thus securing his own right to contribution, and is, therefore, where the rights of the makers as between themselves are not otherwise explained, incompetent to testify on behalf of.the payee in an action against the personal representatives of his deceased co-maker to the fact of the latter’s execution of the note. 1889, Wilcox v. Corwin, 117 N. Y. 500 ; s. c., 27 State Rep. 836 ; rev’g 50 Hun, 425 ; s. c., 21 State Rep. 432 ; 3 N. Y. Supp. 317.
I. Interest as disqualifying under section 829.
This much-debated provision'may be more clearly understood by analyzing the sentence of the statute into its component members.

Upon what proceedings applicable. Who disqualified.

As witness for whom.

Against whom.

Upon the trial of an action, or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title, by assigrment or otherwise,
shall not be examined as a witness, in his own behalf or interest, or in behalf of the party succeeding to his title or interest;
against the executor, administrator, or survivor of a deceased person, or the committee of a lunatic, or a person deriving his title or interest from, through or under a deceased person or lunatic, by assignment or otherwise,

*213
Concerning what.

concerning a personal transaction or communication between the witness and the deceased person or lunatic,

Exception.

except where the executor, administrator survivor, committee, or person so deriving title or interest is examined in his own behalf, or the testimony of the lunatic or deceased person is given in evidence, concerning the same transaction or communication.
II. Interest as requiring the fact testified to be left to the jury.
The general principles now applied by the courts on this question are :
a. In general, the judge cannot direct a verdict on the testimony of an interested witness or instruct the jury that such testimony is finding on a material point.
b. The only cases where he can ever, if at all, are where the testimony is direct to the fact, and there is no conflict in the evidence, nor anything from which an inference contrary to the testimony can be drawn, nor any impeachment of the witness. Even then recent cases deny the right.
c. Where there is a conflict of evidence on a material point, a party has a right to have that question left to the jury, even though the sole evidence in his favor be his own testimony to the fact or that of an interested witness.
[For earlier cases on this subject, see Hodge v. City of Buffalo, 1 Abb. N. C. 356, and note at page 362, and Miller v. Ins. Co. of N. A., Id. 470].
The test of what is interest for the purpose of this question is not the same as the test of disqualification under Code Civ. Pro. § 829. “ Interest ” there means only legal interest ; here it includes also bias.
The old rule found in the’books that uncontradicted testimony of an unimpeached witness must be credited, was formulated at a time when no witness having a legal interest in the event of the action was .competent to testify. Hence, in stating that rule now, some qualification referring to disinterestedness must be added (Elwood v. Western Union Telegraph Co., 45 N. Y. 554). Here, in an action against a telegraph company for damages caused by its transmitting a forged or fraudulent message, the operators were the witnesses whose testimony raised the question. The Court say : “Very clear and decisive evidence was required in this case to establish that the message which came over the defendant’s wires was not communicated in *214 the natural and ordinary manner. From the necessity of the case, sucli evidence as there is to that effect proceeds wholly from parties having an important interest in the question. Each of them, if guilty of the negligent act, would have the strongest motive to deny it, as the admission would subject him. or her to severe responsibility for the consequences. This is a controlling consideration in determining whether the statements of these witnesses should be taken as conclusive. Without imputing a want of truthfulness to these witnesses, we think, that their relation to the subject-matter in controversy was of itself sufficient to take from the court the right to dispose of the case upon their evidence and to require that the jury should pass upon the weight to be given to their statements. There is also a want of distinctness in the statements of the witnesses, irrespective of any question of credibility.”
1. Wholly undisputed evidence.] Kelly v. Burroughs, 102 N. Y. 93. The mere fact that the sole witness on a material, point is interested, if there is no conflict in the evidence nor anything from which an inference against the fact testified to by him can be drawn, is not enough to require submission to the jury ; but the judge may directa verdict upon the strength of such testimony. Contra, 1 Abb. N. C. 356.]
According to Lomer v. Meeker, 25 N. Y. 361, upon the authority of which Kelly v. Burroughs was decided, it is error to leave a question to the jury merely because the only testimony is that of an interested witness. That was an action against makers and indorser, and the indorser who did not defend testified to usury. Error not to dismiss.
2. In Richmond v. Diefendorf, 51 Hun, 537, defendant having shown that the note sued on was got by fraud, plaintiff testified in his own behalf to his good faith in buying it, as to which he was the only witness ; but he was. unimpeached and uncontradicted, and there was no evidence tending to show notice. Held, error to find a verdict against him. Contra, Joy v. Diefendorf, 130 N. Y. 6, citing Canajoharie Bk. v. Diefendorf, 123 Id. 191 ; where, however, the. testimony was said to be improbable and the acts suspicious.
3. Legal interest in the event.] In Kavanagh v. Wilson, 70 N. Y. 177, plamtiff, a broker, sued for commissions on a sale negotiated by him ; and the witness was his son, employed in his father’s business at a salary, and having had an understanding in reference to this sale that he was to be paid a fee for the service “ in case it went through,” that is, as the court interpreted it, if the sale was so negotiated that his father and those interested with him received their compensation. Held, error to direct a verdict on the son’s testimony. The Court, per Earl, J.,. say :
*215 “ Here the witness was not wholly disinterested. He was a son of the plaintiff, engaged in his business and thus biased and interested in feeling. His compensation for drawing the contracts (and how large that was to be does not appear) depended, I infer from the evidence, upon his father's success in getting his „ compensation as the broker.
“ The story the witness tells is not, entirely free from some improbability. Why did Poillon promise to pay more than double the usual price for the sale of country property ? Why was this compensation never spoken of before or after in the numerous conversations heard by the witness ? What induced Poillon to make the promise of the large sum, when the usual commission would seem to have been ample compensation for any service to be rendered? Why did he nialte the unusual promise to pay the absolute sum in no way dependent upon the amount for which the property might be negotiated ? The further fact exists that no one was living who could contradict the witness if he did not testify truly. All these facts and considerations made this a case proper for the jury, and the court erred in refusing to submit it to them.”
4. — liability.] In Sipple v. State, 99 N. Y. 284, 289, on a claim against the State for injuries resulting from negligence in the care of the canals by leaving gates open, the lock-tender testified that he closed them and did not open them again; and it was claimed that this was conclusive, and showed that the injury must have been caused by the interference of some third person. Held, not error to find the contrary. The court of appeals say : “ This witness was not disinterested, and the trial court might well have regarded his evidence on that point with suspicion and incredulity. He had been charged, in a criminal prosecution, with liability for the mischief occasioned by the act in question, and although discharged from that accusation, still remained liable to a civil action for damages, and to prosecution for felony under section 479 of the Penal Code, and to other punishment, under section 480. He was, therefore influenced by the most serious considerations, not only to repel the imputation of neglect, as against himself, but to throw the suspicion of guilt upon others. Under the circumstances surrounding this man, the trial court was under no legal obligation to give implicit credit to his testimony (Wohlfahrt v. Beckert, 92 N. Y. 490 ; Elwood v. W. U. Tel. Co., 45 Id. 549). So far as the proof shows, he was the only person known to have had anything to do with these paddles on the night in question; and from the shortness of time elapsing betweén the hour when he left the *216 lock and the appearance of the flood in the surrounding country, it is not an unnatural or an improbable inference that the opening of the paddles was synchronous with the departure of the lock-tender.”
5. Bias or interest of attorney and counsel, together with contradiction.] In Wallace v. Marks, Supreme Ct., 1881, 13 Weekly Dig. 399, the action was for moneys had and received, and the defense was that a previous action for the same cause had been settled and discontinued. The evidence to support this defense was the testimony of the defendant, and of his attorney and counsel ; and also the testimony of the referee before whom the previous cause was tried to the effect that he left the parties with the understanding that they were disposed to settle, and was afterward informed by plaintiff’s attorney that a settlement had in fact been made.
Against this testimony, was the testimony of the plaintiff to the effect that no settlement had been made or authorized by her. The court say : “ The defendant who testified was clearly interested in making out this defense, and the evidence of his attorney and counsel was liable to be biased by their relations with the defendants. For that reason it cannot be held to be controlling on the jury as long as it was opposed by the positive denial of plaintiff. The evidence of the referee, while it corroborated the probability of a settlement, did not add much weight to the defense.”
6. Interest in the event; testimony intrinsically probable, weighed agamst extrinsic improbability.] In Wohlfahrt v. Beckert, 92 N. Y. 490, defendant, a druggist, was sued for negligence in furnishing a poison causing death ; and after the testimony of his clerk to the warning defendant had given with the drug, the trial judge held that it was not necessary to call any further witnesses, and directed a verdict for defendant. The court of appeals held that this was error, for though the testimony was not in itself improbable, and the witness was uncontradicted and unimpeached, the witness was interested to shield himself and his employer, and the improbability that the deceased should take the drug as he did if he was really warned as the witness testified, should be weighed against the probability of the testimony to the warning. Finch, J., says: “ The question here whether the nonsuit ordered by the trial judge can be sustained or not, turns solely upon the inquiry whether the warning was in fact given, and that again upon the question whether the jury would have been at liberty to disbelieve the evidence of the defendant’s clerk. His story in itself was not improbable, so far as the defend *217 •ant’s action was concerned. A druggist selling for ten -cents a medicine which was a poison, and in a quantity capable of killing an incautious or ignorant purchaser, would be quite likely, we should suppose, to give the brief information needed to protect'his customer and shield himself from grave danger and disaster. Nor was the witness impeached by what are called the contradictions in his Testimony drawn out on cross-examination. They were very slight and utterly immaterial. But two facts disclosed 'by the proofs opened his • testimony to doubt and possible disbelief. He was an interested witness. He had violated The law by omitting the label required. The medicine he delivered had killed its victim. The consequences of the act upon himself, upon his future, and upon his employer were certain to be disastrous in the absence of explanation or justification. The motive to avert the danger, even by falsehood, was plain and powerful. The label was not on the phial. No such defense was possible. The only other one was to swear to the verbal warning given to the customer. The witness, therefore, stood in a position such as To provoke suspicion, arouse doubt, and justify watchful -and rigid criticism. And then joined to that came the facts of the conduct of the deceased. If the evidence was true, he took the poision in a deadly dose and from the hands of his wife, with knowledge that it was poison and that he was largely exceeding the prescribed quantity. Nothing in the case permits us to imagine that he did so purposely and intended suicide.”
7.--; discredit by fraudulent conduct.J In Munoz v. Wilson, in N, Y, 295, plaintiff, as administratrix, sued to .foreclose a mortgage on land. A debtor had conveyed the land in fraud of creditors and procured the grantee to make the mortgage to the plaintiff’s intestate, and the foreclosure was resisted by the debtor’s wife, who claimed that the mortgage was void as fraudulent. ITeld, that the testimony of the debtor was not conclusive.
The court say: “Not only was such testimony more or less in conflict with the legal presumptions arising from the acts and admissions of Michael and the defendant George, but it was given after the death of the adverse party in interest, and under the influence of a strong pecuniary interest in the controversy. His testimony was, .also, in several material respects contradicted by that of other apparently disinterested witnesses, and subject to the discredit which attaches to a person engaged in a scheme to defraud his creditors. Abundant reason, therefore, existed for the suspicion with which the trial court regarded his evidence, so far as it tended to promote his own interests. *218 Indeed, the mere fact that a witness is the real party to an action, and interested in its result, has been deemed sufficient to require its credibility to be submitted as a question of fact, and more especially so when the testimony is improbable in itself, or inconsistent with other circumstances of the case (Honegger v. Wettstein, 94 N. Y. 252 ; Elwood v. W. U. Tel. Co., 45 Id. 549 ; Kavanagh v. Wilson, 70 Id. 177 ; Gildersleeve v. Landon, 73 Id. 609).”
8. One witness interested and one impeached.J In Gildersleeve v. Landon, 73 N. Y. 609 (replevin), it was necessary for plaintiff to prove title. The only two persons who testified to the sale of the property to plaintiff, were the plaintiff . and his son ; evidence was given on the part of defendant tending to impeach the son. Held, error to direct a verdict, for plaintiff. The court of appeals are said to have stated the rule, to be that “ where the credibility of a witness is. impeached, his testimony cannot be taken as conclusive-although uncontradicted, and the question of fact as to-which his testimony was given must be submitted to the jury. So, where the witness is interested in the question,, although he is not directly impeached and his testimony is uncontradicted, his credibility is a question for the jury,, and the court is not warranted in directing a verdict upon; his testimony alone.”
9. Interest of a creditor of plaintiff'.] In Plyer v. German Am. Ins. Co., 31 State Rep. 836 ; s. c., less fully, in 121 N. Y. 689 ; plaintiff sued on a policy for $6,000 on a vessel, and a witness for plaintiff had made repairs on the vessel to'the amount of $3,052.35, of which he had been paid about. . $2,600. Held, that in the absence of any evidence that plaintiff was not good for the balance, or that he was. regarded as not good, this was no evidence of interest or bias, -within the rule that testimony of an interested or biased witness is not enough to sustain a direction of a verdict by the judge. ,
10. Bias of an employee without legal interest in the event.] Michigan Carbon Works v. Schad, 38 Hun, 71. Here the. action was by a principal, for moneys collected by its selling agent, the defendant, for its goods sold for it by its agent. One of plaintiff’s witnesses was an agent of the plaintiff and had sold some of the goods to the defendant, and the other .was an attorney employed by the plaintiff to, collect claims due to it ; and the interview as to which he testified was had while attempting to collect this particular claim. Held, error to refuse the defendant’s request that he should be allowed to go to' the jury upon the question of tlie nature, extent and- meaning of his admissions, and his *219 intent and purpose in making them, and as to the credibility of the plaintiff’s witnesses.
The court, per Barker, J., say : “ Whenever it is made to appear that the witness entertains a bias, however slight, towards the party against whom he is called to testify,, then the triors, whether a court or a jury, must reflect upon his evidence and determine upon the weight and consideration which should be given to the same. . . . It is also-competent to prove the social and business relations existing between the witness and the party calling him to the stand, and if it is established that they are such as usually and ordinarily produce an interest in the mind of the witness in favor of the party calling him on the question in dispute, then it is for the jury to say to what extent, if any,, the relationship impairs or destroys the credibility of the witness. . . . Without imputing a want of truthfulness to either of these witnesses, we think that their relation to-the subject-matter in controversy was, of itself, sufficient to-take from the court the right to dispose of the case upon their evidence and to require that the jury should pass upon the weight to be given to their statements.”
11. Opinion evidence ; testimony to an admission ; self-dissenting testimony of adverse party.} In Arms v. Arms, 13 State-Rep. 196, the question was whether testator ever made the note in suit. The testimony on which plaintiff relied was (1) the opinion of a disinterested witness ; (2) the testimony of a disinterested witness to an admission by the testator that he made it; (3) plaintiff’s own testimony, when called as a witness by the defendant, that the testator gave-plaintiff the note. 'Held, that, there being no contradiction,, the testimony was conclusive, and the jury were properly instructed that they must find for the plaintiff on that, question.
12. Testimony varying apparent effect of document is deemed contradicted.”] In Dean v. Metropolitan Ry. Co., 119 N. Y. 540, 549, defendant, in order to show title out of plaintiff and thus defeat the action, gave in evidence a deed from plaintiff and his wife to a third person ; plaintiff then testified on his own behalf to facts showing that the deed was a mere mortgage which had been satisfied. Held, that this testimony, though not contradicted, was not conclusive ; for he was an interested party. Hence it was error to refuse to charge that the jury were not bound to believe plaintiff’s testimony, because he was an interested witness, the paper-purporting to be a deed, and he calling no other party in corroboration. The testimony by means of which it was. sought to convert a deed absolute in its terms into a mortgage, should have been submitted to the jury. *220 The same principle appears in U. S. Natl. Bk. v. Ewing, p. 201 of this vol.]
13. Self contiadiction of a part of the witnesses, no depreciation of the testimony of the others.] In Plyer v. German Am. Ins. Co., 31 State Rep. 836 ; s. c., less fully, 121 N. Y. 689, six witnesses for plaintiff testified to a fact, and three of them were proved to have made statements contradictory thereto out of court. Held, that this did not impair the effect of the otherwise uncontradicted evidence of the others ; but the plaintiff was entitled to a binding instruction that the fact was proved.
14. Effect of calling adversary as witness.] It should be observed in this connection that testimony of an adverse party, or of a witness having a clear and strong interest, adverse to the party calling him, does not conclude him in such sense as to entitle his adversary to direction of a verdict, but should go to the jury, who may believe or disbelieve. Becker v. Koch, 104 N. Y. 394 (holding it error to hold a party bound by the explanation of his charge of fraud, given by the assignor, whom he called as a witness).
s. p., President, etc. of Manhattan Co. v. Phillips, 109 N. Y. 383, holding the party who called his adversary not concluded, although there was no evidence contradicting the adversary’s explapation.
III. Contradicting adversary's witness on matter drawn oict on cross-examination.
The following additional cases illustrate the application of the rule given in the case in our text.
15. Matter of Mason, 60 Hun, 46, 54 ; s. c., 38 State Rep. .533 1 14 N. Y. Supp. 434. In a proceeding in the nature of a writ de lunático inquirendo (Code Civ. Pro. §2320) the court in a dictum lay down the rule on the authority of Steven's Digest of Evidence, 186, that “ A witness may be asked any question tending to show that he is not impartial, and if he denies the facts suggested, he may be contradicted.”
16. Thomas v David, 7 Carr. & P. 350. Assumpsit on a promissory note. Plea of non est factum. One of plaintiff’s witnesses, his female servant, was an attesting witness to defendant’s signature. On cross-examination on being .asked whether she did not constantly sleep in the same bed with her master, the plaintiff, she denied it. It was proposed to call a witness who would contradict her on this point, to which it was objected that the point was collateral to the issue involved.
Held (Coleridge, J.), that the contradiction was admis *221 sible. It is material to the issue whether the principal witness who comes to support the plaintiff’s case is his kept mistress, just as if she was his sister or daughter. Had the question been whether the witness had walked the streets as. a common prostitute, that would have been collateral to the issue, and her denial could not have been contradicted.
17. Attorney-General v. Hitchcock, 1 Exch. 91. Information against defendant, a maltster, charged with using-a cistern for making malt without having previously entered it as required by Stat. 4 & 5 Will. 4, c. 51, § 6„ Witness deposing to defendant’s having used the cistern was. asked on cross-examination whether he had not said that the officers of the Crown had offered him ^20 to say that the cistern had been used. Witness denied it, and defendant’s counsel proposed to ask another witness whether he had said so. The Lord Ch, B. Pollock, upon objection that the question was irrelevant to the issue and that it tended to raise a collateral issue, ruled that it could not be asked. Rule by defendant’s counsel for new trial on the ground that this evidence was improperly rejected : upon cause shown,
Rule discharged. On page 100, “ A distinction, should be observed between those matters which may be given in evidence by way of contradiction as directly affecting the-story of the witness touching the issue before the jury and those matters which affect the motives, temper and character of the witness, not with respect to his credit but with reference to his feelings towards one party or the other. In the case cited of Thomas v. David (above), on the witness being asked whether she was not connected in a particular-manner with one of the parties, and having denied it, the learned judge permitted evidence to show that the connection which she swore had not existed did in reality subsist. The object in doing so, was not to prove or disprove anj' part of her testimony, but the evidence was received on the same ground as it was in the case of Exp. Yewin (reported in 2 Camp. 638, n.), where Mr. Justice Lawrence permitted evidence to be given to contradict a witness as to his having used expressions importing revenge. It is certainly allowable to ask a witness in what manner lie stands affected towards the opposite party in the cause and whether he does not stand in such a relation to that person as is likely to affect him and prevent him from having an unprejudiced state of mind, and whether he has not used expressions importing that he would be revenged on some one, or that he would give such evidence as might dispose of the cause in one way or the other. If lie denies that, you may give *222 evidence as to what he has said, not with the view of having a direct effect on the issue, but to show what is the state of mind of that witness in order that the jury may exercise their opinion as to how far he is to be believed. But those cases where you may show the condition of a witness or liis connection with either of the parties are not to be confounded with other cases, where "it is proposed to contradict a witness on some matter unconnected with the question at issue.”
18. Day v. Stickney, 14 Allen (Mass.), 255. The fact that a witness is prejudiced for or against a party or has a strong purpose of feeling of interest in relation to the matter in controversy, is a proper fact for the jury ; and even though he denies it on being examined, the fact may be shown by other evidence.
19. Gaines v. Commonwealth, 50 Pa. St. 319, 327. Indictmentfor murder. Evidence circumstantial as to defendant’s "having committed the act.
The principal witness for the State upon cross-examination denied having ever told any one that deceased had illicit intercourse with his (witness’) wife and that he would watch his opportunity to take revenge. It was proven on part of defendant by a witness, a female, that he had made such complaints and threats. It was proposed to follow this up by offering to prove by another female similar complaints and threats for the purpose of contradicting and discrediting the Commonwealth’s witness.
Held,, error to reject this evidence, for the reason that “ as the witness had been cross-examined as to collateral matter his answer was conclusive on the defendant and could not be contradicted.” The court say (per Strong, J.), “Throwing out of consideration the inquiry, as not raised by the record, whether the fact was not pertinent, as an independent circumstance tending to show that some other than the defendant, to wit, the witness himself, had perpetrated . the murder, had it not a direct bearing upon the motives operating upon the mind of the witness when he testified ? It surely had a tendency to show ill-feeling in him towards the deceased. It would have been a circumstance to be considered, had the question been directly whether he was guilty of the murder, especially when taken in connection with other evidence which had been given. It furnished an additional ground of suspicion though it may have been slight, that he might have had something to do with the crime, perpetrated as it was by an unseen hand. All this he must have known. And if so, he must have testified with the knowledge that there were *223 suspicious circumstances pointing more or less distinctly at him. Was this no motive to make the case as strong as «possible against another, and thus divert suspicion from tliimself ? The motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters. They may therefore be proved. 1 Whart. Cr. Law (5th ed.) § 817 ; People v. Austin, 1 Parker's C. C. L. 154. It is for this reason that the feelings of a witness towards one of the parties to an issue may be proved. Partiality and hostility are no more cogent .motives to untruthfulness than is the common and natural -desire to ward off suspicion of guilt from one’s self even at the cost of fastening it upon another. It appeals to the love -of personal security, one of the strongest passions of the human heart. For these reasons this evidence should have been received."
20. Tullis v. State, 39 Ohio St. 200. Indictment for forgery of deed against this defendant, the one to whom the deed .was given and others.
One of the defendants had made a statement when summoned as a witness on behalf of this defendant that he had conveyed certain lands to the grantor of this deed and received from him certain bonds and a deed for lands in West Virginia; that the bonds were in fact worthless, and that grantor had no title to the West Virginia lands ; that the deed (charged to have been forged) was made in consequence of this failure of consideration in the original contract ; that he saw the purported maker sign the deed, and that it was .genuine.
This defendant, after making this statement, communicated with the prosecuting attorney and was introduced as a witness for the State, and as to the execution of this deed testified in direct conflict with the statement above. On cross-examination he admitted that a third defendant had come to him some time before the trial with a proposition .for a settlement of the difficulty so far as he, the witness, was concerned, and said that he had talked with and could obtain from the administrators of the grantor not only compensation for all he had lost in his transactions with their intestate, the grantor of this deed, but also the payment -of his expenses if he would testify as he finally did. Motion to strike out as incompetent.
Held, error to strike out the evidence as to this conversation with the third defendant. This evidence was offered to show that the previous statement and not the testimony was true. The. proposition for settlement was admissible. “It is always competent to show any interest, bias or preju *224 dice of a witness, and it is the duty of the jury to consider it in connection with his testimony (citing Wharton Cr. Ev. §§ 476, 477). Here the question was, not whether an offer had been made by one clothed with authority to bind the estate, but whether a proposal-had been made by anybody, and if so, what effect it had in controlling the conduct off this defendant as a witness.”
21. Mimms v. State of Ohio, 16 Ohio St. 221, 233. Indictment for murder of one who, it was proposed to show, was-an employee of the owner of the gambling-house where the killing occurred, and had in his possession money belonging to his employer, known to defendant, who had money after the killing. Attempt to show a lack of money on the part of defendant which it was arguedconstituted a motive'for the crime. A brother of defendant had testified in chief that defendant was never without money, and that shortly before the murder he had two or three hundred dollars-On cross-examination, he denied that he had stated that defendant was a -worthless or trifling fellow, or that he had to support him.
A witness was asked in rebuttal of this denial whether between a certain date and the trial she had ever heard this brother say anything about' defendant being an idle or trifling fellow ? She answered, “ Nay,” and was asked further,, “ Have you anything else to say on that question ?” To-which she answered that shortly after the arrest of his-brother she heard him say, “ I have given Thomas (defendant) money since he came home at different times as much as fifty dollars—money to pay his little expenses around— to pay for his washing. I gave him three dollars a little more than a week ago to pay for his washing.” Motion to-rule out this testimony as not competent as contradicting the statements of witness for the purpose of impeaching his. credibility.
Held, not error to overrule this motion.
It was material to the defense to explain the prisoner’s possession of money shortly after the murder shown by the-prosecution.
The statement made in response to the second question by this witness was not in harmony with the testimony of defendant’s witness and tended to rebut it; and, as that testimony was material to the defense, this in rebuttal was, material and admissible, to determine the credibility of the witness.
22. Yeaw v. Williams, Town Treasurer, 15 R. I. 20 ; s. c.,. 23 Atl. Rep. 33. Action for personal injuries sustained by a. defect in highway. The surveyor of the highway as a wit *225 ness for defendant had testified that in his opinion the situation of the post, which had caused the accident, was not such as to make the highway unsafe or out of repair. Held, no error to allow him to be asked on cross-examination “ if he did not order the post removed,” to which he answered that he did. The object of asking the question was to discredit the witness by showing that his conduct was inconsistent with his testimony. In this view, its admission afforded no ground for a new trial. .