JOHN SIPPLE, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

Under the act of 1883 (§ 13, chap. 205, Laws of 1883; § 1, chap. 321, Laws of 1870), giving to the board of claims jurisdiction to hear and determine claims against the State for damages sustained " from the canals or from their use and management, or resulting or arising from the negligence or conduct of any officer of the State having charge thereof, or from any accident or other matter or thing connected therewith," but prohibiting an award unless a case is made out such as would create a legal liability " were the same established against an individual or corporation," the liability of the State for injuries occasioned by negligence is not limited to negligence of some person described by law as an officer of the State ; it assumes liability also for an injury caused by the negligence of those intrusted by the State with the execution of its work, provided the law would, under similar circumstances, adjudge a liability against an individual or corporation. (MILLER and DANFORTH, JJ., dissenting.)

The evidence in support of a claim presented under said act showed that the injury complained of was caused by the opening of the paddle-gates to a lock in the night-time, between half-past twelve and two o'clock whereby a large quantity of water was let into the lower level of the canal, which breached the bank and overflowed and damaged the claimant's premises. It appeared by the evidence that the lower level was but half a mile in length and was constructed upon an embankment where a breach in the bank was liable to occur and occasion great damage. It was the custom to keep lock-tenders on guard at all times during the season of navigation at the lock ; on the night in question the only lock-tender on duty left the lock at midnight, leaving the

paddles unlocked and unguarded. So far as the proof showed he was the only person who had authority to interfere with the gates on that night; he testified that he closed them at half-past twelve and did not again open them. The board found that the break was the result of a want of proper care on the part of the lock-tender, * * * and negligence in leaving said lock without any one in charge, and made an award in favor of the claimant. *Held*, no error; that the board was not legally bound from such testimony, in the absence of evidence showing who was the offender, to find that some third person opened the gates; that the lock-tender was not disinterested and the board was not bound to give implicit credit to his testimony; also that it was competent for it to find that a reasonable care required a constant watch.

Also *held* (MILLER and DANFORTH, JJ., dissenting), that the award was sustainable on the ground of an omission to perform a duty required of the lock-tenders, and which the exercise of a reasonable care and prudence enjoined upon the master.

The injury happened a day before the canal was officially ordered to be closed for the season, and it was frozen over at the time. It was claimed that the lock-tenders were justified in leaving the lock unguarded on account of the proximity of the time for closing, and the unnavigable condition of the canal. It appeared that it was the custom at the close of navigation to securely lock the paddle-gates, so that they could not be opened: they were left unlocked on the night in question. *Held* (MILLER and DANFORTH, JJ., dissenting), that it was the duty of the lock-tenders to guard the gates until they were locked by the proper authorities.

Under the said act the State assumes obligations not only in favor of those navigating the canals, but to the public at large, to see that its canals are so constructed and managed as not to cause injury to others.

(Argued April 29, 1885; decided June 9, 1885.)

APPEAL from an award made by the board of claims, May 23, 1884, awarding to respondent $600 for damages to his lands by reason of a break in the Erie canal.

The facts are sufficiently stated in the opinions.

*D. O'Brien*, attorney-general, for appellant. No negligence on the part of the State was shown for which it can be made liable.. (*O'Brien* v. *Cantwell*, 59 Barb. 497; *Nicholson* v. *Erie R. Co.*, 41 N. Y. 525; *Sherman* v. *W. T. Co.*, 62 Barb. 150; *Victory* v. *Baker*, 61 N. Y. 356.) Negligence will never be presumed. (*Sherman* v. *W. T. Co.*, 41 N. Y. 525.) The State is not liable for the negligent acts or conduct

of the lock-tenders. (*Lewis* v. *State*, 96 N. Y. 71; 7 Bacon's Abr. [ed. of 1860], title " Office and Officer," 279; Bouv. L. Dict., same title; *Sullivan* v. *Mayor*, 53 N. Y. 652; *Holly* v. *Mayor*, 59 id. 170; *Costello* v. *Mayor*, 63 id. 50; *Devlin's Case*, 5 Abb. Pr. 281; *People* v. *Conover*, 17 N. Y. 67; 3 Greenl. [1st ed.] App., No. 2]. The lock-tenders were not in the employ of the State at the time the break occurred, and the State was, therefore, not accountable for their conduct. (*Wright* v. *Wilcox*, 19 Wend. 343; *Frazier* v. *Freeman*, 43 N. Y. 566; *Isaacs* v. *Third Ave. R. R. Co.*, 47 id. 122; *Mott* v. *Consumers' Ice Co.*, 73 id. 542.) If the lock-tenders were negligent in the performance of their duty to the State, the claimant was not entitled to an award because such negligence was not the proximate cause of the damage which he sustained. (Shearm. & Redf. on Neg. 7, § 9; *Coy* v. *U. & S. R. R. Co.*, 23 Barb. 643; *Day* v. *Crossman*, 1 Hun, 570; *Crane* v. *Petrie*, 6 Hill, 522; *Ins. Co.* v. *Tweed*, 7 Wall. 44; *Penn. R. R. Co.* v. *Kerr*, 62 Penn. St. 353; *Reiper* v. *Nichols*, 31 Hun, 391.) The refusal of the trial court to find a material fact proved by uncontroverted evidence, or the finding of a material fact wholly without evidence to sustain it, is an error at law, and, upon exception thereto, reviewable in this court. (*Mason* v. *Lord*, 40 N. Y. 476; *Fellows* v. *Northrup*, 39 id. 117; *Draper* v. *Stouvenel*, 38 id. 219; *Sheldon* v. *Sheldon*, 51 id. 354.) In a case of negligence where the evidence is equally consistent with the absence as with the existence of negligence, a cause of action has not been made out. (*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 356; 62 Barb. 623; *Toomey* v. *R. R. Co.*, 3 C. B. [N. S.] 146; *Cotton* v. *Wood*, 8 id. 568.)

*Wm. H. Bowman* for respondent. The State is liable (Laws 1870, chap. 321, § 1; Laws 1883, chap. 205, § 13.) The lock-tenders were servants of the State, because they were at all times subject to the will and control of the State. (4 El. & Bl. 570; 4 Allen, 138.) The lock-tenders were acting within the scope of their authority. (*Limpus* v. *L. O. Co.*, 1 Hurlst. & Colt. 526;

*Frazer* v. *Freeman*, 56 Barb. 234.)   The State is liable, as it owed a positive duty to the claimant to maintain the water at a proper level. (*Att'y-Gen'l* v. *B. Nav. Co.*, 35 L. J. Eq. [N. S.] 619 ; Shearm. & Redf. on Neg., § 258.)   The negligent failure of lock-tenders to perform their duty was chargeable to the State. (*Dolan* v. *D. & H. C. Co.*, 71 N. Y. 285 ; *Kissinger* ·v. *N. Y. & H. R. R. Co.*, 56 id. 538 ; *Ernot, Ex'r*, v. *H. R. R. Co.*, 39 id. 61.)

RUGER, Ch. J.   It must be conceded that the State can be made liable for injuries arising from the negligence of its agents or servants, only by force of some positive statute assuming such liability. (*Lewis* v. *The State*, 96 N. Y. 71.) It is claimed by the respondent that such an assumption has been made by section 1, chapter 321, Laws of 1870.   This gives authority to the board of claims " to hear and determine all claims against the State of any and all persons and corporations, for damages alleged to have been sustained by them from the canals, or from their use and management, or resulting or arising from the negligence or conduct of any officer of the State having charge thereof, or resulting or arising from any accident or other matter or thing connected with the canals.   But no award shall be made unless the facts proved shall make out a case, which would create a legal liability against the State were the same established against an individual or corporation."

It is contended by the attorney-general that this act should be so construed as to exempt the State from any liability occurring through its management of the canals, except that arising from the negligence of some person described by law as an officer of the State.   We think such a construction is uncalled for either by the letter or spirit of the statute.   Its plain reading makes the negligence of a State officer but one of the alternatives upon which the liability depends.   Thus the State assumes liability for damages arising from the use and management of the canals, or from the negligence or conduct of its officers having charge thereof, or from any accident

" or other matter or thing connected " with them.    It is not essential to a recovery under the act that the damages should be caused by the negligence of such an officer ; but if the same were occasioned by " any accident or other matter connected with the canals," or from " their use or management," no matter what the immediate cause may be, its express terms authorize an award, provided under similar circumstances the law would adjudge a liability against an individual or corporation.    The act was conceived in the plainest principles of justice, and was intended to afford a substantial and not a delusive remedy to parties who might be injured by the careless and negligent conduct of those who were intrusted by the State with the execution of its work.    The canal was a State enterprise and was managed and controlled by its servants, and reason and justice require when it engages in public enterprises from which a revenue is expected to be derived, and in the prosecution of which private property is required to be taken, and individual interests jeopardized, that it should compensate those whose property rights are thereby invaded.    The object in view was the protection of the citizen, and not the exemption from liability of the State ; and it is quite evident that the State thereby intended to assume, with reference to the management of the canals, the same measure of liability incurred by individuals and corporations engaged in similar enterprises, and to afford to parties injured the same redress which they would have against individuals and corporations for similar injuries.    The use of the terms " the negligence or conduct of any officer of the State having charge thereof " were obviously descriptive, and intended to embrace all those persons in the employ of the State intrusted with the performance of duties relating to the canals, and from a neglect or omission to perform which damages might occur to individuals.    It is unreasonable to suppose that the State intended to confine its liability to cases arising from the negligence of those officers only having the duty of general supervision to perform, and deny relief in cases where damages arose from the neglect of others having practical control of its operations.    It is unquestionably the

duty of all State officers to scrutinize closely the authority under which claims are made upon the public treasury, and defeat such as are not clearly warranted by law; but it is unbecoming the dignity and honor of a great State to attempt to evade the fulfillment of its obligations according to their spirit and meaning, or to stint the payment of a proposed indemnity by a constrained or illiberal construction of the language in which its promise is framed. The act is broad and comprehensive in its language and should be construed in the spirit which inspired its enactment.

The only inquiry under it, therefore, is whether the claimant made out such a case by evidence as entitled him, if it had been proved against an individual or corporation, to have recovered against them. The proof shows that the injury occurred in consequence of the opening of the paddle-gates to lock No. 65, on the canal, between the hours of half-past twelve and two, on the night of December 5th and 6th, 1883, whereby a large quantity of water was let into the lower level of the canal, its banks were breached, and the premises of the claimant adjacent were overflowed and greatly damaged. It is not claimed by either party to this controversy that these paddles could have been opened by accident or without human agency, and the inference is unavoidable that they were intentionally or inadvertently left open either by the tender in charge of the locks or by some third persons. It is contended that the board of claims is legally bound, in the absence of affirmative evidence showing the actual offender, to find the latter to be the guilty parties by reason of the evidence of the lock-tender that he closed these paddles at half-past twelve o'clock and did not again open them. We do not think this is so. This witness was not disinterested, and the trial court might well have regarded his evidence on that point with suspicion and incredulity. He had been charged, in a criminal prosecution, with liability for the mischief occasioned by the act in question, and although discharged from that accusation, still remained liable to a civil action for damages, and to prosecution for felony under section 479 of the Penal Code, and to other punish-

ment, under section 480. He was, therefore, influenced by the most serious considerations, not only to repel the imputation of neglect, as against himself, but to throw the suspicion of guilt upon others. Under the circumstances surrounding this man, the trial court was under no legal obligation to give implicit credit to his testimony. ( *Wohlfahrt* v. *Beckert*, 92 N. Y. 490; *Elwood* v. *W. U. Tel. Co.*, 45 id. 549.) So far as the proof shows, he was the only person known to have had any thing to do with these paddles on the night in question; and from the shortness of time elapsing between the hour when he left the lock and the appearance of the flood in the surrounding country, it is not an unnatural or an improbable inference that the opening of the paddles was synchronous with the departure of the lock-tender.

The trial court found, "that the break was the result of want of proper care on the part of the lock-tender in charge of said lock No. 65, and in leaving said lock without any one in charge thereof." We think the evidence, authorized such a finding. It was supportable not only upon the theory suggested, but also upon the ground of an omission to perform a duty enjoined upon them by the instructions under which they were acting, and which duty the exercise of reasonable care and prudence in the management of the canals imposed upon the master. The gates in question opened into a level of only a half a mile in length constructed upon an embankment overlooking a large stretch of country, and where a breach in the bank was liable to occur, and occasion great damage. It was competent for the trial court to find that the exercise of reasonable care required a constant watch upon these levels during the period of their use for purposes of navigation, and that an omission to keep such watch was an act of negligence. The evidence showed that it was the custom of the State to keep lock-tenders on guard at all times during the season of navigation at the lock in question, to assist boats in passing through, and to regulate the height of water in the level below; that during that time, these paddles, when not raised, were pulled back and fastened with a ring or pin, but upon the

close of navigation and the removal of the lock-tenders, they were always securely locked, so as to be immovable without the possession of a key or the use of force and violence upon the locks.

The evidence further shows that on the night in question the only lock-tender on duty, left the locks at midnight leaving the paddles unlocked and the premises unguarded. The canals had been officially ordered to be closed on the 7th of December, and they were actually frozen over at the time in question.

It is claimed by the appellant that the lock-tenders were justified in leaving the locks unguarded on account of the proximity of time for closing navigation and the unnavigable condition of the canal. Perhaps that is so, but if they had any right to act on the assumption that the canals were, in fact, closed, did not the same assumption impose upon them the duty of taking those precautions which were customary at the close of navigation? If they are to be believed, these damages occurred either in consequence of their neglect to lock the paddles, or because they neglected the duty of remaining on guard through the night and until the close of navigation. Their duty required them to guard the locks during the season of navigation, and until the paddles were locked by the proper authorities. This duty did not cease with the running of boats, but it continued so long as the presence of water in the canal required its effect upon the respective levels to be watched and provided for. This duty they violated, and to the consequences of such violation the damages are directly attributable.

Under such circumstances a master would certainly be responsible for the act of the servant. Then how can the State escape from it? As between individuals, the doctrine of *respondeat superior* applies where a servant who is employed to perform a duty, and while acting within the scope of his employment, performs it so carelessly and negligently that injuries occur to another. It was in this case the specific duty intrusted to the lock-tenders in question to regulate the height of water in the levels adjoining the locks, and it cannot be questioned but if they had been in the employ of an individual having

the canal in charge as owner, that he would have been liable for the consequences of their neglect. It is said in Shearman and Redfield on Negligence (§ 258), that " the obligations of a canal company do not exist in favor of those only, who navigate the canals, or for whom it transports persons or property. It owes a duty to the public at large to see that its canals, locks, bridges and other property are so constructed, maintained and managed as not to cause injury to others."

These obligations, we think, were assumed by the act in question on the part of the State toward all persons affected by its management of the canals, and should govern its liability in this case.

The award of the board of claims should be affirmed.

MILLER, J. (dissenting). The claim of the respondent arises under the provisions of section 1, chapter 321 of the Laws of 1870, which section reads as follows : " Jurisdiction is hereby granted to and conferred upon the canal appraisers to hear and determine all claims against the State of any and all persons and corporations for damages alleged to have been sustained by them from the canals of the State, or from their use and management, or resulting or arising from the negligence or conduct of any officer of the State having charge thereof, or resulting or arising from any accident or other matter or thing connected with the canals ; but no award shall be made unless the facts proved shall make out a case which would create a legal liability against the State were the same established in a court of justice against an individual or corporation. * * * "

By section 13 of chapter 205 of the Laws of 1883, the board of claims have the same authority to determine claims against the State as the canal appraisers formerly had under the act of 1870. Section 1 of the act of 1870, already cited, embraces damages sustained by reason of the improper use and management of the canals, or from the negligence or conduct of any officer of the State having charge thereof, or resulting or arising from any matter connected with the canals.

Negligence is evidently the foundation upon which the

claim must be predicated, and, without such negligence, it is difficult to see how any such claim can be maintained before the board of claims. That such was the intention of the legislature is apparent from the succeeding clause in the section cited, which requires that a case should be established of legal liability against the State the same as against an individual or corporation. Without proof of negligence, no remedy exists against the State under the act cited, and the only relief which can properly be claimed is with the legislature. It would seem to follow that the negligence upon which the claim necessarily arises should be the act of some officer, person or party having the care and management of the canals and exercising a control over the same or some portion thereof.

The damages for which the award in this case was made arose on the night of the 5th of December, 1882, by reason of a break in the canal caused by the paddle-gates at lock No. 65 not being securely fastened so as to prevent the flow of water into the level between lock 65 and lock 64, and also by the gates at lock 64 not being opened so as to allow the water to be discharged without injuring the banks of the canal.

The first question which arises is, whether any negligence is shown on the part of the State for which it is legally liable. The court found, " That the aforesaid break in said canal was the result of the neglect and want of proper care on the part of the lock-tenders in charge of said lock No. 65, and in leaving said lock without any one in charge thereof." The proof upon the trial showed that it was the duty of the lock-tenders to open and close the gates at proper times, and to regulate the height of the water in the adjacent level for the purpose of facilitating the passage of boats. The regulations in regard to the lock-tenders required them to be at the locks alternatively each for twelve hours out of the twenty-four, one coming on at twelve o'clock, noon, and remaining until twelve o'clock, midnight, when he was succeeded by the other lock-tender, there being two at each lock. The lock-tender, Van Keuren, remained at lock 65 on the night in question, until half-past twelve, midnight, that being one-half hour longer than his duty

required him to remain, and he then left. The other lock-tender did not appear at all to take his place.

It appears there were no boats on the canal at the time, nor had there been any for three or four days prior; that the canal was all frozen over and covered with ice three inches thick, and that boats could not pass with the canal in that condition. Notice had been given by the superintendent of public works that the canal would be formally closed on the seventh of December, and as there was no duty to be performed by the lock-tenders on the night of the fifth, there would seem to have been no necessity for their being there at that time. The evidence of Van Keuren, who was the only witness sworn as to the manner in which locks were managed, established the fact that while the canal was being operated, the gates were fastened with a ring upright over the lever; that they were left in that way the night he left the lock, fastened in the ordinary way, and it was not possible for the gates to open themselves. The proof was uncontradicted to the effect that the gates were properly secured, and, according to the findings, the paddles, or a portion of them, became open between half-past twelve o'clock and four o'clock in the morning, which caused the injury complained of. The testimony of the lock-tender, Van Keuren, also showed that after the canal was closed for the season, they generally came through and chained the gates down and locked them, not the gates, they usually open in locking boats, but the paddles were locked. It would thus seem that the duty of locking the paddles did not devolve upon the lock-tenders but upon other officers of the canal, and that duty was not to be performed until the final closing of the canal, which had not at that time taken place. The lock-tender had taken all proper precaution to guard against accident, and, having no further duty to perform in passing boats through, there was no necessity of his remaining there any longer, nor of the other lock-tender coming to take his place when he left. It was not, we think, negligence in the lock-tender to leave unlocked the paddles, as it was not a part of his duty to lock them, nor in his leaving the lock at the time he did after having done all in his power to secure the gates.

If there was no negligence under the provisions of the statute cited, the respondent is not entitled to damages, but even if there was negligence, we think the State is not liable for the negligent acts of a lock-tender in the employment of a State officer as it is claimed he is by the respondent's counsel. It is a well-settled rule that the State is not liable for the negligence or misfeasance of its agents, unless such liability has been voluntarily assumed by it by legislative enactment. (*Lewis* v. *State*, 96 N. Y. 71 ) A lock-tender is not an officer of the State having charge of the canals within the meaning of section 1, chapter 321, Laws of 1870, already cited. He has nothing to do with the care, management or control of the canals, and his duty merely is to attend to the locks, to the opening and closing of the same, and the passing of boats through them. He is not a State officer in any respect. He is only a day laborer employed to perform manual or mechanical labor, a mere servant or employe, and is entirely divested of any official powers or functions. He has no more authority than any other laborer on the canal who is hired by the canal officers. He is not named in the statutes of the State or included in the classification of State officers. (R. S., tit. 1 to 5, chap. 5, part 1.) He takes no official oath, gives no official bond, and has no official duties prescribed by law, and it can scarcely be claimed that it was the intention of the legislature to render the State liable for the acts of an ordinary laborer or employe employed by a canal officer. Such a construction would be extending the object of the statute far beyond the plain purpose of the legislature as expressed by its enactment and should not be sanctioned. While the act in question might well apply to State officers upon whom duties were imposed by statute, and many of whom were required to give an official bond for the faithful discharge of such duties, there is no ground for claiming that its policy was intended to include the liability which might be incurred by the wrongful acts of persons who were employed by State officers and especially for acts done in violation of their orders and directions. The distinction between an officer and an employe of the gov-

ernment is well-considered in the opinion in the case of *Olmstead* v. *Mayor, etc.* (42 Sup. Ct. 481). (See, also, *People* v. *Conover*, 17 N. Y. 67 ; *Sullivan* v. *Mayor, etc.*, 53 id. 652.)

The finding of the court here placed the liability of the State on the ground of want of care in the lock-tender, but as he was not a State officer no case is made out within the provisions of the section of the act cited.

The provisions of section 1 of said act in regard to the liability of the State as in the case of an individual or corporation are words of limitation and do not enlarge or restrict the operation and effect of the clauses which precede them. The responsibility here is imposed by legislative enactment and must be restricted within the limits of the same. No claim is made that the canal officers were guilty of any negligence in the employment of incompetent men as lock-tenders.

After a careful examination we are satisfied that no claim was made out against the State under the provisions of the section of the act cited.

The order and award appealed from should be reversed and the proceedings dismissed.

ANDREWS, RAPALLO and FINCH, JJ., concur with RUGER, Ch. J. ; EARL and DANFORTH, JJ., concur with MILLER, J.

Award affirmed.