## JACOB SCHMIDT

### *v.*

### THE STATE OF ILLINOIS.

*Opinion filed December 12, 1890.*

1. RESPONDEAT SUPERIOR—*State not liable for negligence of employes.* A state or other involuntary municipal corporation cannot be held liable for the tort or negligence of any of its employes unless such liability is created by statute.

2. COMMISSION OF CLAIMS—*purpose of statute creating.* The law creating this commission does not undertake to create a new liability against the State but provides a method by which claims against the State may be heard before this commission, and the claim rejected or an award made in favor of the claimant.

3. SAME—*claimant must present a legal or equitable claim against State.* The Commission of Claims has no power to make an award in any case unless the facts show a legal or equitable claim against the State. It was not the intention of the Legislature to leave it discretionary with the commission to make an award in favor of the claimant regardless of the question as to whether or not he had a legal claim against the State.

4. PRACTICE—*as to conclusiveness of decision.* Section 10 of the act creating this commission provides as follows: "In case said commission shall reject any claim so filed as aforesaid upon the hearing thereof, such rejection shall conclude all parties thereto, unless said commission shall in their award thereon otherwise direct."

The claimant's petition was filed with the Auditor of Public Accounts on the 15th day of November, 1889. Petition alleges on the 10th day of December 1887, and prior thereto claimant was engaged in the service of the State of Illinois as employee in the Southern Illinois Penetentiary at Chester; that the particular position in which he was employed, was the position known to prison rules as "cell house keeper" and the duties of such position were to have charge of the cell house during the day while the convicts confined in said prison, were at

work; to scrub out cells; scrub the floors and make beds
and to do such other work as might be required in such
capacity in order to keep the cells comfortable and
cleanly, and that, he at all times, worked under the direc-
tion of superior officers. On the day aforesaid while
petitioner was so engaged in the discharge of his duty
as cell house keeper, and without any fault or negligence
or omission of duty on his part, one George Dawson,
a colored convict, confined in said prison, wilfully and
maliciously attacked claimant with a sharp stick, or
broom handle, which he drove into one of claimant's
eyes, tearing the eye from the socket and wholly destroy-
ing the use and sight thereof; so that since said injury
claimant had been unfitted and incapacitated for any
kind of business. That his mind had been so
affected so that he was unable to perform any
services requiring any thought or operation of
mind. That as keeper of cell house it was claimant's
duty to care for certain classes of convicts who
were allowed to remain in their cells during working
hours; that is, convicts who were unable from infirmities
of age, and those who were sick and unable to work.
That said convict Dawson did not belong to those classes
of convicts nor was he sick or otherwise incapacitated
for work and was not, under the rules of said prison,
entitled to remain in said cell house during working
hours. That said Dawson was an unruly and dangerous
convict and was disliked and feared by the guards and
officers of the prison as well as by his fellow convicts,
to such an extent that the other convicts feared him and
desired and requested that they be not required to work
in the company or presence of said Dawson. That it
was the duty of the officers of said prison who were the
superior officers of said claimant to see that said Dawson
was placed at hard labor, or that he was confined in the
solitary; that said superior officers wholly omitted and
neglected their duty and did not require said Dawson to
be placed at hard labor or confined in the solitary but
allowed him to remain in said cell house in violation of

the known rules of said prison and their well known duty in that behalf. Said convict Dawson had been sentenced to prison for life for the crime of murder committed on his own child—a little girl about 12 years old. That immediately after the attack upon claimant by said Dawson, said Dawson was immediately locked up in the solitary where he has ever since remained, and by reason of the injuries alleged in the petition, claimant asks damages and for an award against the State for the sum of $5,000.00.

The proof in this case shows that the duties of claim-- ant were substantially as alleged in his petition. On the 10th day of December 1887 claimant was sent to the cell where said Dawson was confined for the purpose of cleaning out the cell. That claimant asked said Dawson to step outside so as to enable him to clean out the cell. That said Dawson seized a stool and a broom stick and ordered him to shut the door. Claimant observing the dangerous mood that Dawson was in thought it best to let him alone until another time and shut the door and locked it and was in the act of turning to move away when said Dawson thrust the broom stick through the bars and into claimant's right eye as averred in petition.

By a stipulation of the counsel for claimant and the Attorney General, it appears that neither party was able to ascertain in what manner this convict Dawson obtained the broom stick which he used as a weapon in the injuries inflicted upon claimant; but claimant testifies that up to the time of finding it in his possession as described, he did not know that he had anything of the kind or how he obtained it and that he did not obtain it from the claimant. As far as it appears from the evidence in this case there is nothing to show in what manner he obtained this stick. But it is said in testimony of claimant that convicts were not allowed to have brooms or sticks of that kind in their cells. Attached to the evidence in this case are the printed rules for the government of convicts in the penetentiary at Chester. These rules do not disclose anything upon the subject as to

whether they were allowed to have brooms in their cells or not. The only printed rule we find having any bearing on the question is rule 10 which provides: "That convicts must not carry knives, tools, of any kind; pencils, paper or any material whatever from the shop to the cell, without permission in writing from the warden or deputy." But it clearly appears from the evidence of the warden and other employees that this convict Dawson was known and recognized as a very vicious and dangerous man and was supposed to be more or less insane. If it be conceded, which the proof leaves in some doubt, that this convict obtained the stick used by him in the attack upon claimant, through the negligence or carelessness of some employee, then the rule of law seems to be firmly settled that a State or other involuntary municipal corporation, cannot be held liable for the tort or negligence of any of its employees unless such liability is created by statute. See following cases where this has been so held: Murdock Parlor Grate Co. vs. Commonwealth, 24 N. E. Rep., 855; Hill vs. Boston, 122 Mass. 344; Curran vs. Boston, 151 Mass., 505; Gibbons vs. U. S., 8 Wall, 269; U. S. vs. Kirkpatrick 9 Wheaton 720; Lewis vs. State of New York 96 N. Y. 71; Sipple vs. State, 99 N. Y. 284; Splittorf, 108 N. Y. 205; 2nd. Dillon on Municipal Corporations, Sec. 761-762. Cooly's Constitutional Limitations, 240, 247; Hedges vs. County of Madison 1 Gil. 567; Town of Waltham vs. Kemper, 55 Ills. 346; David Elmore vs. Drainage Commissioners decided by Supreme Court of Illinois; not published.

The law creating this commission does not undertake to create a new liability against the State but provides a method by which claims against the State may be heard before this commission, and the claim rejected or an award made in favor of the claimant. The statute creating this Commission, after reciting the various classes of claims of which the Commission might have jurisdiction, among which may be said to be included claim of this petitioner, provides: "And such commis-

sion shall hear such claims according to its rules and established practice and determine the same according to the principles of equity and justice, except as otherwise provided in the laws of this State; and shall file with the records of each claim determined, a brief, written statement of the reason of the determination."

The point has been pressed in argument by counsel for claimant that the legislature would have the right in a case of this kind, in its discretion, to allow a reasonable sum to persons injured, making an appropriation for its payment, although the claim was strictly speaking, neither a legal or equitable claim, and that the intent of the act creating this Commission was to transfer to the Commission the same discretionary power that the legislature would have; or, in other words, that the Commission would be justified although believing the claim was neither an equitable or legal claim against the State, in its discretion to make an award against the State and in favor of claimant. To this proposition we cannot assent. It is our understanding that in the use of the language "to determine the same according to the principles of equity and justice" is meant and used with a legal signification and that this Commission has no power to make an award in any case unless the facts show a legal or equitable claim against the State. We do not believe it was the intention of the legislature to leave it discretionary with the Commission to make an award in favor of the claimant regardless of the question as to whether or not he had a legal claim against the State.

We are of the opinion further, that it would be an exceedingly dangerous precedent to hold that the Commission had any such discretion. While it is true and we have endeavored in this case to find some principle upon which we might make an award in favor of this claimant, that his health and usefulness has been practically destroyed, recognizing that it is one of those cases appealing strongly to the sympathy of those who have heard this evidence, or are familiar with the facts of the case and we cannot but believe that if the facts of this

case are presented to the legislature of this State that some relief will be granted to this unfortunate claimant; but, at the same time we feel compelled to hold that we have no power, under the facts, to make an award in his favor and for that reason we reject the claim.

Section 10 of the act creating this Commission provides as follows: "In case said Commission shall reject any claim so filed as aforesaid upon the hearing thereof, such rejection shall conclude all parties thereto, unless said Commission shall in their award thereon otherwise direct." In order that claimant may present his claim to the legislature we expressly direct, that under the power conferred upon us by the above section, that claimant shall not be concluded by the finding above rejecting his claim.