FRED R. BUTTERFIELD, Claimant, *v*. THE STATE OF NEW YORK.    No. 9162.

(State of New York, Court of Claims, April, 1918.)

Damages — sustained by claimant from floods — who entitled to award for — water and watercourses — negligence — evidence.

The acquisition by the state of the right to construct an artificial channel along Wood creek in Washington county, and take water therefrom for canal purposes and impound it in the Champlain canal, does not give the state the right to so negligently discharge water from the impounded basin as to damage property along said creek.

Claimant was in possession of and cultivated lands on the bank of said Wood creek easterly of and near the twelve-mile level of the Champlain canal. Upon the trial of a claim for flooding his lands and destroying his crops, based upon the alleged negligence of the officers and employees of the state in the management and operation of said twelve-mile level, which claim arose prior to the changes made by the Barge canal construction, it appeared that at the time of the flooding of said lands there was a heavy rainfall and the tender of the waste-weir at Smith's Basin, whose sole duty was to look after said weir and be there at times of heavy rains and see that the level was kept normal, testified that he never went near said weir or paid any attention to it and that he did not know that the gates were open. It also appeared that a patrolman, whose duty it was to watch the canal and see that it was maintained at a normal level and in so doing to notify the waste-weir tender of the necessity of opening or closing the gates thereof, was not attending to his duties on the night in question and did not know that the said gates were open. *Held*, that the principal contention on the part of claimant, that the gates on the waste-weir at Smith's Basin were open and that unnecessarily large quantities of water were discharged into Wood creek, so that from the point of such discharge the banks were overflowed in both directions and that this condition caused the overflow to plaintiff's land, was sustained by the evidence, and plaintiff is entitled to an award of damages.

State of New York, Court of Claims, April, 1918.   [Vol. 103.

CLAIM for damages for alleged negligence of the officers and employees of the state in the management and operation of the Champlain canal, by reason of which claimant's lands were flooded and his crops destroyed.

Erskine C. Rogers, for claimant.

Merton E. Lewis, attorney-general, by Frank B. Valentine and Harry W. Ehle, deputy attorneys-general, for state.

PARIS, J.   The claimant was in possession of and cultivated lands located on bank of Wood creek, in town of Kingsbury, Washington county, easterly of and near the twelve-mile level of the Champlain canal. His claim is based upon alleged negligence of the officers and employees of the state in the management and operation of the said twelve-mile level of the canal by reason of which his lands were flooded and his crops destroyed in the months of September and October, 1907.

Similar claims based upon the same facts have been filed by other people. One of these claims, known as the Robert Parker claim, was tried before the Court of Claims and dismissed on or about April 18, 1909. As I have reached a different conclusion from that made in the Parker claim, the reasons therefor should be stated.

These claims arose prior to the changes made by Barge canal construction and in order to understand any discussion of the matter it is necessary to have in mind the relation of the old twelve-mile level to the surrounding country and the method and manner by which it was fed and operated. This level was a summit level, extending from Fort Edward on the south, through the town of Kingsbury, to Fort Ann on the

Misc.]    State of New York, Court of Claims, April, 1918.

north.  It was fed and maintained by water taken from
the Hudson river at a point above Glens Falls and con-
ducted through the canal known as the Glens Falls
feeder, which connected with the said level at a point
about two miles northerly of Fort Edward.  There
were gates in the Glens Falls feeder at the point of
connection with the river by which the flow of water
could be regulated or shut off entirely.  This Glens
Falls feeder was the main source of supply for the
twelve-mile level.  At the point of intersection with the
said level the water flowed in both directions, toward
Fort Ann and toward Fort Edward.  The land on the
easterly side of this level was lower than the canal and
in this low land were the beds of Wood creek and Bond
creek.  The land on the westerly side was higher and
naturally drained towards the canal through various
streams which the canal intersected.  The largest of
these streams is Bond creek, which was intersected by
the canal at Dunham's basin, at a point about three
miles north of Fort Edward and about four miles
south of Smith's basin.  Bond creek, before it was
intersected by the canal, flowed to the Hudson river
into which it emptied at Fort Edward.

The brook, called in the testimony "Haskins'
brook," emptied into the canal at a point about one
mile south of Smith's basin and would, if it had not
been interfered with by the canal, have run into Wood
creek.  Neither of these streams, in ordinary summer
weather, furnished any large supply of water, except
when swollen by heavy rains.  Other small streams
flowed into the canal when there were large rainfalls,
but were practically dry most of the time.  The level
discharged water both at Fort Edward and Fort Ann
through locks and sluices connected with the locks at
those places.

There were also several spillways along the line of

the level which discharged water when the water got to the height of the crest of the spillway. One of these, known as the O'Brien spillway, was located between the Glens Falls feeder and Fort Edward. Another, known as the Minton spillway, was not far from the point where the Haskins' brook entered the canal.

The state had further provided opposite the entrance of Bond creek a waste-weir, with gates which could be raised and lowered, by which water could be discharged from the canal into the southerly end of Bond creek and conducted through that natural watercourse to the Hudson river.

At Smith's basin there was also a waste-weir similar to and operated in the same manner as the one at Dunham's basin, the discharge from which was to Wood creek. The object, as I understand it, of these waste-weirs was that they might be used at times when the spillways were inadequate to carry off the surplus waters to relieve conditions of high water in the level. They were not ordinarily used, except in times of heavy rains and high water and in the fall to empty the canal.

A short distance upstream from the point where the Smith's basin waste-weir discharged waters into Wood creek, East creek, which is quite a large stream, unites with Wood creek. This creek rises in the town of Hartford and flows from east to west to Wood creek. Wood creek rises in the town of Argyle and flows through the towns of Kingsbury, Fort Ann and Whitehall and thence into Lake Champlain.

Dunham's basin is on the divide between Bond creek and Wood creek, one of which, as stated, flows into the Hudson river and the other into Lake Champlain. Wood creek throughout its entire course in the town of Kingsbury runs through a flat country and is a slow, sluggish stream. In times of heavy rains it taxes the

capacity of the bed of Wood creek to carry off the natural flow of water into it, especially below where East creek joins same.

The principal contention on the part of the claimants in both this claim and the Parker claim was that the gates in the waste-weir at Smith's basin were open and allowed to discharge unnecessarily large quantities of water into Wood creek, so that from the point where the same entered Wood creek the banks were overflowed in both directions, some water actually running upstream, and that this condition prevented the water which naturally would have flowed down from above from going off and caused same to overflow claimant's land. This contention is sustained by the evidence.

The claimants did attempt to prove other acts of negligence on the Glens Falls feeder, at Fort Edward and at Dunham's basin, but, practically, failed in doing so. On the trial of the *Parker* case, a man named Wiggins was sworn as a witness and testified that he opened the gates at Smith's basin by direction of the assistant superintendent of the canal, and left them open all night. It was proved also on that trial that the level at and in the vicinity of Smith's basin was so low that boats were aground, indicating that unnecessarily large quantities of water were drawn.

An examination of the minutes in the *Parker* case and of the opinion written therein, which is reported in 13 Court of Claims, at page 17, convinces me that the claim was dismissed on the ground that the court did not believe the testimony of the witness Wiggins, that the gates were open at the time in question, the natural inference being that if it had believed this witness the court would have found for the claimant. On the trial of the claim (the witness Wiggins being dead), the proof as to the gates being opened was made by

State of New York, Court of Claims, April, 1918. [Vol. 103.

other witnesses. These witnesses were all disinterested and I believe thoroughly truthful and trustworthy, so that I have no doubt that at the time in question in September the gates were open, although it does not clearly appear by whom they were opened, and a dismissal of this claim cannot be made for the reasons stated on the trial of the *Parker* case. Feeling that the claimant has failed to prove any negligent act in connection with the management of this level at Dunham's basin, on the Glens Falls feeder or at Fort Edward, I will not discuss what was done at those points, but will confine myself to the situation and occurrences at Smith's basin.

At the time in question there was a very heavy rainfall and all the natural streams hereinbefore referred to were pouring water into the canal. There was an employee at Smith's basin whose sole duty it was to look after this waste-weir, to be there at times of heavy rains and see that the level was kept normal. On the occasion complained of here by the claimant in September, as appears from the waste-weir tender's own statement, he never went near this waste-weir at all or paid any attention to it; he said he did not know the gates were open.

There was also on this part of the canal a patrolman whose duty it was to watch the canal and see that it was maintained at a normal level and in so doing to notify the waste-weir tender of the necessity of opening or closing gates in the waste-weir. He also was not attending to his duties on the night in question and did not know that the waste-weir gates were open. Had either of these men been attending to his duties he would have discovered that these gates were open and could have caused them to be closed as soon as the danger of overflowing the banks was over.

The waste-weir tender was sworn as a witness in

this case and by his own testimony and records showed that on the occasion in the month of October complained of he did open the gates of the waste-weir at Smith's basin and leave them open *all night.*

I think these facts sufficiently establish the negligence of the state both in September and October. The claimant's crops were injured by waters which might have run off through Wood creek had the state not turned large volumes of water therein and obstructed the flow. That the amount of water so run off was unnecessarily large seems to be conclusively established by the evidence that before the gates were closed the water in this level was so far below the normal height that navigation was stopped and boats grounded.

The state is liable for the omission to perform a duty required as well as for the negligent acts of patrolmen and waste-weir tenders. See *Sipple* v. *State,* 99 N. Y. 284.

In *Harris & Briggs* v. *State,* 12 Court of Claims, 26, Judge Rodenbeck says in discussing a similar case: "There can be no question but that the State, having impounded water in the Champlain canal, cannot negligently discharge it into Wood creek so as to cause damages to owners of property along the line of the creek; the State may have acquired the right to construct an artificial channel along Wood creek and abstract water from Wood creek for canal purposes but the acquisition of this right would not give it the power to discharge negligently water from this impounded basin to the damage of the owners of property along Wood creek."

This rule seems to be laid down in *Carhart* v. *State,* 11 Court of Claims, 128; *Atkinson* v. *State,* 124 App. Div. 249; *McKee* v. *Delaware & Hudson Canal Co.* 125 N. Y. 353.

State of New York, Court of Claims, April, 1918.    [Vol. 103.

The damages sustained by claimant by the flood of September 10, 1907, were $490 and by the flood of October twenty-eighth were $295 and he should have judgment for those sums.

ACKERSON, P. J., concurs.

Judgment accordingly.