*875 OPINION OF THE COURT
Philip J. Patti, J.
Upon the papers, and after hearing James S. Grossman, Esq., on behalf of claimant, and Reynolds E. Hahn, Esq., Assistant Attorney General, on behalf of defendant, this motion is granted and the claim sua sponte is dismissed.
In this motion claimant seeks a determination (1) that claimant’s time to file its claim has not yet commenced, or (2) that Claim No. 111324 was timely served and filed, or (3) in the alternative, granting permission to file a late claim pursuant to Court of Claims Act § 10 (6).
These proceedings arise because of a dispute with respect to the date of accrual of the underlying cause of action. A brief chronological retrospective, reciting undisputed facts, is helpful. An acquisition map showing an easement to be acquired by the defendant’s Department of Transportation was prepared and certified on December 17, 2001 (see attachment to the claim herein, claimant’s exhibit A). The acquisition map was filed with the Monroe County Clerk’s Office on July 17, 2002. Notice of acquisition was sent by certified mail, return receipt requested, on August 16, 2002, to Corn Hill Landing, LLC, at 301 Exchange “Street [szc]” (should be Boulevard),[1] Rochester, New York 14608 (exhibit A to defendant’s papers, affidavit of service). The certified mail return receipt reflects the signature on August 19, 2002, of one E Bruno (claimant’s exhibit M), whom claimant has identified as a former receptionist for another company also located at 301 Exchange Boulevard. Indeed, the affidavit of Anthony M. DiMarzo, the principal owner and managing member of claimant, affirms that the 301 Exchange Boulevard address was utilized by some “eighty to ninety other entities in which [he] has an interest.”
To be sure, there are separate sworn affidavits by claimant’s litigation counsel, house counsel, the principal owner and his consultant, each of which asserts that the notice of acquisition ostensibly received on August 19, 2002 was never received or seen by any of them. In essence, it is argued that such was never served upon claimant, and suggesting that since it was *876 addressed to Corn Hill Landing, LLC, and not to the attention of Anthony DiMarzo or to Anthony DiMarzo as registered agent, that in fact no service of the notice of acquisition upon claimant ever took place, and the time to commence a claim in this court has not yet begun to run.
To the extent that the motion seeks a declaratory determination by me that the service of the notice of acquisition in August 2002 was not properly completed, such relief is denied. Eminent Domain Procedure Law § 502 (A) requires the condemnor, within 90 days after the date of filing the acquisition map (here on July 17, 2002), to “serve, either by personal service or by certified mail, upon each condemnee a notice of acquisition.” Defendant argues, and I find no reason to hold otherwise, that service was complete upon claimant’s receipt, as established by the signed return receipt card, a copy of which was appended as exhibit M.
Claimant has failed to demonstrate the existence of any statutory or regulatory duty, or public policy, to address the certified letter to the attention of Anthony DiMarzo individually or as registered agent. Indeed, the letter was sent to the claimant in its legal name, and at its registered address, and clearly was received by an individual who is identifiable as someone who was employed at that address, purportedly by another entity controlled by Mr. DiMarzo. Moreover, since it is alleged under oath that Mr. DiMarzo utilized the same address for some 80 to 90 entities in which he has an interest, it is hard to discern how the suggestion that the failure to place his name on the address would have allowed this written correspondence to be specifically directed to him. In fact, given that all the entities in which he had an interest used the same mailing address, correspondence using the claimant’s name, Corn Hill Landing, LLC, was at least as likely, if not more so, to be properly routed as any correspondence which also included Mr. DiMarzo’s name. The undisputed facts are that the certified mail letter containing the notice of acquisition was properly addressed, and was properly served in full accord with statutory requirements. That it may have been misplaced or misrouted, and I do not doubt the veracity of any of the four deponents noted above when they aver that they never were in possession of said mailed notice, does not negate the proper service and receipt thereof at 301 Exchange Boulevard.
The Court of Appeals has reiterated (Matter of ATM One v Landaverde, 2 NY3d 472, 478 [2004]) that
*877 “service will be deemed complete upon mailing, and a properly executed affidavit of service will raise a presumption that proper mailing occurred (see Kihl v Pfeffer, 94 NY2d 118, 122 [1999]; Engel v Lichterman, 62 NY2d 943, 944-945 [1984]) [and that] ‘mere denial of receipt is not enough to rebut this presumption’ (Kihl, 94 NY2d at 122).”
Vita v Heller (97 AD2d 464 [1983]) is inapposite as there service was purportedly accomplished by regular mail, and here the use of certified mail is confirmed by the signed return receipt card (exhibit M), by an individual employed at the claimant’s mailing address, but ostensibly by another entity.
The discussion above merely addresses the service of the notice of acquisition. After serving the notice of acquisition, the defendant was required to and did “cause proof of such service to be filed and recorded in the office of the county clerk . . . [as] [t]he record of the proof of such service shall be presumptive evidence of due service of such map and notice of acquisition on the person served” (EDPL 502 [A] [1]). The defendant has provided undisputed evidence of the filing on November 13, 2002 of the requisite affidavit of service by certified mail (defendant’s exhibit A).
However, claimant raises additional grounds for the relief sought by contending that despite the defendant’s fulfillment of its statutory obligation to file proof of service, the records of the Monroe County Clerk’s office did not include any proof of service. Claimant has provided affidavit support of at least two or three occasions when searches were done of the records of the Monroe County Clerk to determine whether proof of service of the notice was recorded and indexed. It was not until October 13, 2005 when, as averred by a representative of claimant who once again searched in the Monroe County Clerk’s office, that such proof of service was located in a file “of miscellaneous documents” which were not indexed. This same deponent avers that as of October 26, 2005, such proof of service was still not indexed at the Clerk’s office.
Such putative inaction by the Monroe County Clerk’s office does not affect this aspect of the relief sought before me. The defendant fulfilled its statutory obligations by serving the claimant with the notice and by filing the proof of service with the Monroe County Clerk. To the extent that claimant implies negligence by the Monroe County Clerk, regardless of whether such might be deemed a function of the Clerk either as a county *878 employee or as an agent of the courts, such implied “negligence” has no bearing on any of the various demands for relief before me today, certainly not as to the date when the underlying cause of action accrued. Moreover, the proposed late claim sounds in appropriation, not in negligence, and as such this argument is legally irrelevant.
Next, claimant argues that the three-year period within which it is required to file its claim with the Clerk of the Court of Claims (Court of Claims Act § 10 [1]) should be measured from the date of the filing of the proof of service, to wit, November 13, 2002, and thus that the claim it filed herein on September 2, 2005 is timely. Such a proposition is unsupportable. Claimant provides no case law or statutory reference to buttress its assertion. EDPL 503 (A), however, does provide statutory clarity, requiring a claimant to “file within three years after service of the notice of acquisition.” To accept claimant’s argument, which of course would make the filing and service of the claim timely, requires me to ignore the unambiguous language of the statute (see Roberts v State of New York, 11 AD3d 1000 [2004]). If I did so, claimant might enjoy a fleeting but pyrrhic victory, awaiting reversal by the Appellate Division.
In sum, therefore, all remedies sought by claimant with respect to the filed claim herein are denied, and since I find that it was untimely served and filed beyond the three-year period specified in EDPL 503 (A) and Court of Claims Act § 10 (1), the claim is dismissed sua sponte. An answer or other responsive pleading is not required in appropriation claims (22 NYCRR 206.7 [a]), and thus objections here as to a failure to comply with the time limitations of section 10 have not been waived (Court of Claims Act § 11 [c]).
This brings me to claimant’s last request for relief, for permission to file a late claim, and requires an examination of the provisions of Court of Claims Act § 10 (6) to ascertain whether the statute allows a late claim application of a cause of action sounding in appropriation. Because the defendant challenges the court’s authority to provide this relief (see Boyajian v State of New York, 293 AD2d 560 [2002]), a retrospective review of the statutory history will prove instructive.
On August 5, 1975, then Governor Hugh L. Carey disapproved 18 private claim bills that would have permitted untimely claims, stating that
“[i]f there is a defect in the general laws of the State that precludes many meritorious legal or equitable *879 claims from being heard in the Court of Claims, the general laws should be amended to provide greater and uniform access to the Court for all the people of this State” (1975 Disapproval Mem No. 170 [emphasis added]).
The Executive Department then submitted a bill, the Legislature enacted it and, on June 8, 1976, Governor Carey approved chapter 280 of the Laws of 1976, amending the late claim provisions of the Court of Claims Act, effective September 1, 1976.
Specifically, chapter 280 (§ 2) eliminated the limitation that all late claim applications be made within two years of accrual, and permitted the same at any time
“before an action asserting a like claim against a citizen of the state would be barred under the provisions of article two of the civil practice law and rules. For the purpose of this subdivision, a claim against the state arising under subdivision one of this section shall be deemed an action upon an implied contractual obligation.” (Court of Claims Act § 10 [6].)
It is compellingly significant that the specific reference to deeming an appropriation in subdivision (1) as one upon an implied contractual obligation was entirely new, and unambiguously evinced a legislative intent to provide late claim relief for claims such as the one at bar. This cited language of section 10 (6) has remained inviolate for nearly 30 years, although the Legislature made modest changes to other portions of subdivision (6) on two occasions (L 1995, ch 466; L 2001, ch 205).
Just one year later, on August 11, 1977, the Legislature repealed the State’s Condemnation Law and enacted a new Eminent Domain Procedure Law (L 1977, ch 839), which Governor Carey noted was the culmination of nearly seven years of effort by members of a State Commission on Eminent Domain (after earlier versions in 1974 and 1975 had been disapproved) (see Governor’s Mem [Carey] approving L 1977, ch 839, 1977 McKinney’s Session Laws of NY, at 2529). The Governor also noted that the bill “establishes substantial uniformity in the procedures with variations in limited circumstances involving acquisitions by the State . . . [and] involved the identification, repeal, reenactment and amendment of over 150 separate sec *880 tions of law” (id. [emphasis supplied]).[2] Because of the magnitude of the changes, the effective date of the new law was made nearly one year later, July 1, 1978, so that each state and local agency, and all others affected could recommend any necessary remedial legislation. The affected statutes are listed below to reflect the omnibus nature of that new law, but also to highlight by its silence that no changes were enacted as they related to the Court of Claims Act, thus perforce leaving intact the September 1, 1976 legislative enactment in section 10 (6) specifying the treatment of appropriations as actions upon implied contractual obligations.
Moreover, my review of the Bill Jacket of the EDPL reveals total silence on this issue, with general references such as from the New York State Bar Association which observed that the pattern set by the new EDPL “generally follows the present practice in the Court of Claims, which has proven to be an efficient method” and provides for “some variances for procedures in the Supreme Court” (Mem of NY St Bar Assn. Bill Jacket, L 1977, ch 839) but impliedly not in the Court of Claims. Another inference drawn from a portion of the Bill Jacket is the July 5, 1977 letter from Honorable Milton Alpert, at the time a judge of the Court of Claims and member of the State Commission on Eminent Domain which drafted the bill that was enacted. Judge Alpert observed that “[c]urrent affirmative features of present laws are continued relating to appraisals, trial and viewing by the court” and that an “adequate repeal bill accompanies the instant bill which, in addition to repealers, also saves necessary laws currently in effect” (Letter of Honorable Milton Alpert to Judah Gribetz, as Counsel to Governor, Bill Jacket, L 1977, ch 839 [emphasis supplied]). In a postscript he added that the *881 delayed effective date afforded a full legislative session to correct any oversight.
In the nearly 26 years from the legislatively created remedy inserted into section 10 (6) until the Second Department’s decision in Boyajian, my research has revealed no question or doubt about the availability of late claim relief in appropriation claims. In fact, there are numerous decisions, albeit unreported, where late claim relief was granted by this court, without appeal or challenge as to the viability of that portion of section 10 (6). In a decision dated December 26, 1989 in Fort Orange Post #30 Am. Legion v State of New York (Ct Cl, Motion No. M-41261), after a claim filed some A1!2 years after service of the notice of acquisition was dismissed as untimely, the Honorable Edwin Margolis granted permission to file an untimely appropriation claim.
Shortly thereafter, then Presiding Judge of the Court of Claims, Donald J. Corbett, Jr. considered an application for the filing of an untimely appropriation claim in Hess Realty Corp. v State of New York (Ct Cl, Feb. 14, 1991, Motion No. M-43134). In that matter, where it was also alleged that service of the notice of acquisition was never effectuated, and the late claim motion was filed more than three years after the notice of filing was recorded, the court, citing the Sessa decisions (infra), exercised its discretion and granted permission to file a late claim.
Other judges have also considered and granted late claim applications in appropriation claims. The Honorable Thomas P. McMahon in Siegel v New York State Dept, of Transp. (Ct Cl, Oct. 1, 1992, Motion No. M-46190) considered an application for permission to file a late claim for the appropriation of property by the State “pursuant to the Eminent Domain Procedure Law and section 30 of the Highway Law.” The circumstances there were quite sympathetic to the claimants, to wit, their attorney had suffered from a serious illness, necessitating extensive hospitalization, surgeries and recuperation. Judge McMahon considered opposition to the application because it was purportedly time-barred. He reviewed the history of section 10 (1) and (6) with respect to appropriations and late claims, and granted the application. Notably, in that case, as in the current proceeding, despite the passage of three years and the existence of an offer of an advanced payment, those claimants had not yet collected those funds from the State (1110 of the State’s affidavit in opposition therein).
*882 In Ulmschneider v State of New York (Ct Cl, Motion No. M-47219), on March 31, 1994, the Honorable Albert A. Blinder, the same Judge who denied the late claim application in Sessa (infra), granted permission to file the proposed claim as to an appropriation. He quoted the State’s opposition that “with the exception of excuse, and an alternative remedy against [that claimant’s] previous attorneys, all of the other factors set forth in Section 10, subd. 6 of the Court of Claims Act weigh in movant’s favor for an appropriation claim.”
Accordingly, the Second Department’s decision in Boyajian requires scrutiny to see whether it fulfills the Court of Appeals affirmation of “the public policy which seeks to reduce rather than increase the obstacles to recovery of damages, whether defendant is a private person or a public body” (Brown v State of New York, 89 NY2d 172, 180 [1996]). But my review is mindful of a long-standing judicial philosophy to which I adhere that
“it is unbecoming the dignity and honor of a great State to attempt to evade the fulfillment of its obligations according to their spirit and meaning, or to stint the payment of a proposed indemnity by a constrained or illiberal construction of the language in which its promise is framed” (Sipple v State of New York, 99 NY 284, 289 [1885]).
Moreover, the Second Department’s decision in Boyajian does not address the language of the Court of Appeals reviewing and interpreting section 10 (6) with respect to late claim applications for appropriations after the enactment and effective date of the EDPL on July 1, 1978. In considering the applicability of chapter 280 of the Laws of 1976 to claims which had accrued and were time-barred at its effective date, Judge Bernard Meyer observed, albeit in dissent, that:
“[T]he Legislature for the first time gave the court discretion as to appropriation claims, by adding a new second sentence to subdivision 6 expressly referring to such claims and by providing that such a claim should be ‘deemed an action upon an implied contractual obligation’, thus making the period within which discretion could be exercised six years (CPLR 213, subd 2). Since the very purpose of the amendment was to authorize the Court of Claims to allow revival of a time-barred claim at any time within three years after the claim became barred, since the Legislature did so by incorporating by reference a six-year Statute of Limitations, and since *883 the provision as to appropriations was totally new and was intended to replace a system that clearly applied to claims already barred by the three-year statute, it does no violence to the legislative intent to read the amendment as applying to all claims not six years old on the effective date of the amendment. Indeed, to read subdivision 1 of section 10’s three-year provision to require a contrary result when what the Legislature amended was subdivision 6 of section 10 is to create a lacuna which, viewed against the circumstances in which the amendment was enacted, the Legislature cannot reasonably be thought to have intended.” (Sessa v State of New York, 47 NY2d 976, 978 [1979].)
The Sessa majority affirmed for the reasons stated by Justice Mains at the Appellate Division, who noted that “the enactment of subdivision 6 . . . by its express terms served only to expand the court’s discretionary power to permit the filing of late claims” (Sessa v State of New York, 63 AD2d 334, 335 [1978]; also see Ebbets v State of New York, 47 NY2d 973, 975 [1979 Meyer, J., concurring] [where Justice Meyer noted that the “statutory time limit is three years (§ 10, subd 1); the six-year period in subdivision 6 of section 10 is not a statutory time limit on filing a claim. It is rather a limit on the time within which a court may permit a claim to be filed notwithstanding that the three-year ‘statutory time limit’ was not met”]).
I therefore rely upon language in the Court of Appeals decisions in Sessa and Ebbets, decisions rendered after the effective date of the EDPL, where there is affirmative discussion of the availability of the late claim remedy for appropriations. The Boyajian court focused on the trial court’s finding that section 10 (1) required personal service of the notice of acquisition, as contrasted with the option provided by EDPL 502 (A) of personal service or certified mail, and persuasively references EDPL 705 to resolve the conflict between the two statutes. Deference to EDPL 705 is unnecessary as I perceive no overt conflict between EDPL 503 (A) and Court of Claims Act § 10 (6), nor did the Court of Appeals, albeit not addressing the question directly, when the issue of the six-year period to bring a late claim arose in Sessa and Ebbets.
Because there is a crucial distinction in this application, that claimant has not accepted any payments, I am able to harmonize the exercise of my discretion to permit the late claim filing here with the Second Department’s decision in Boyajian. Even were *884 that distinction not so overt, I would be inclined to consider a late claim application relying on my reasoning above regarding the effect of the EDPL on section 10 (6), and legislative intent, as well as the decisions of the Court of Appeals in Sessa and Ebbets. Of course, while one would hope that circumstances would never arise where such an analysis would be put to the test, there are, as a learned commentator of the CPLR has noted, those parties and attorneys who will travel at the precipice of the statute of limitations and will have to seek the court’s discretion to proceed.
Accordingly, while I do not read Boyajian to have foreclosed late claim relief for appropriation claims, it clearly allows such consideration where no “advance payment of just compensation has been made” (Boyajian v State of New York, 293 AD2d 560, 561 [2002], supra). Other judges of this court have declined to grant late claim applications, albeit implying that the full settlement provision of EDPL 503 (A) was triggered only because of the coupling of the acceptance of the advance payment and the running of the three-year period after service of the notice of acquisition (see the denial after reargument of the Honorable Renee F. Minarik in DeBartolo Capital Partnership v State of New York, 1 Misc 3d 293 [2003]; accord West Windsor v State of New York, Ct Cl, UID No. 2002-019-576, Claim No. 104684, Motion Nos. M-65347, CM-65599, Lebous, J.).[3] To the extent that those opinions suggest that late claim relief for appropriation claims in other circumstances is not available, I respectfully demur.
Before attending to the merits of the late claim application, in GLTE Enters, v State of New York (Ct Cl, Jan. 19, 2000, Motion No. M-60583), the Honorable Alan C. Marin of this court considered the very issue before me today, and heard the same arguments made by the defendant. Nonetheless, he granted permission to file a late claim, noting, inter alia, that paragraph 9 of the agreement for advance payment, that “[if] no claim is filed by Claimant in the Court of Claims within the statutory time limit set forth in the Court of Claims Act,” did not permit the conclusion reached by the defendant there that the expiration of the three-year statutory period meant that there was a full and complete settlement of all claims. Indeed, Judge Marin noted that if the language of the agreement had referenced only section 10 (1), the “defendant’s position would be far more ten *885 able.” The defendant apparently did not appeal, but then, I assume, took that analysis to heart, and, at least for the advanced payment agreement at issue (exhibit F to claimant’s motion), modified the above-quoted provision of paragraph 9 of its form contract to read that “[if] no claim is filed by Claimant in the Court of Claims within the statutory time limit set forth in the Eminent Domain Procedure Law” (emphasis supplied).
While this contractual modification now alluded to the EDPL and excised the Court of Claims Act and might be viewed in some circles as good lawyering, it seems presumptuous that the defendant believes that it can quash a specific legislatively enacted statutory remedy en passant in a contract. One might argue that I might be deemed to have engaged in a similar presumptiveness in deferring to the Court of Claims Act rather than the EDPL, but I do not see the statutes as being incompatible, and I do not believe that the Legislature intended to foreswear the recently enacted and extraordinarily specific remedy in section 10 (6) when it laboriously studied and enacted an omnibus law in the EDPL, amending some 150 statutory provisions and, one would think, intentionally continuing the availability of late claim relief for those affected by appropriations on behalf of the State of New York. The State of New York generally holds all the cards in these circumstances, and I believe that the Legislature intended to make the playing field a little more level.
That being said, I find that there is authority to consider the motion for permission to file a late claim and, after due consideration, the motion is granted. Here, as is the case in all such appropriations, the State of New York initiated the action, and it bears the constitutional requirement of just compensation. Several of the statutory factors easily militate in claimant’s behalf. Since the appropriation was initiated by the State, it had notice of the essential facts, the opportunity to investigate, and there is no prejudice, let alone the substantial prejudice articulated in the statute. The State can only be sued in the Court of Claims (Court of Claims Act § 10 [1]), and no other remedy is available. I find that claimant has failed to present a reasonable excuse for its failure to timely file. Of course, claimant need not satisfy all six factors to be successful (Bay Terrace Coop. Section IV v New York State Employees’ Retirement Sys. Policemen’s & Firemen’s Retirement Sys., 55 NY2d 979 [1982]). As to the appearance of meritoriousness, appropriation claims are somewhat unique, but there is no dispute that *886 the State has appropriated the claimant’s property and the only question generally to be determined is the amount of damages and the constitutional requirement of just compensation, precisely what is ultimately decided in every appropriation claim in this court. The factors predominate to claimant’s benefit and the motion is granted.

. N.B.: Although not raised by either party, to the extent that one might raise this question, it is a meaningless distinction. I am aware that the terms “street” and “boulevard” are frequently used interchangeably, as the court’s address in Rochester is 144 Exchange Boulevard, and mail addressed to chambers at 144 Exchange Street is delivered here regularly.

. Changes, including repeals and amendments were made, inter alia, to: Agriculture and Markets Law § 27; Canal Law § 40; County Law § 223 (5); § 385 (3) (a); § 396-b (1); § 828; Correction Law § 21; Education Law § 227 (4); §§ 307, 404 (2); §§ 2511, 2557; Environmental Conservation Law §§ 3-0306, 15-1523 (2); § 15-1729 (4); §§ 15-1731, 15-1909 (3); § 15-1983 (1), (3), (7) (b); § 15-2111 (5), (6); § 15-2117 (1), (2), (3); § 15-2119 (7); §§ 15-2309, 23-1303; Executive Law § 213; General City Law § 20 (2); § 20-e (1) (a); General Construction Law §§ 11-a, 11-b, 16-b; General Municipal Law §§ 72-e, 74-a, 120-u (5); §§ 351, 355, 506 (2); § 555 (2); Highway Law §§ 29, 30, 65, 118 (5); §§ 125, 170, 173, 180, 182, 184, 185, 186, 188, 197, 199, 246, 250 (5), (6); §§ 315-a, 347, 349-c (2.6), (2.6-a), (3.3); §§ 124, 174, 175, 176, 178, 179, 200, 201, 202; Mental Hygiene Law article 71; Railroad Law §§ 22, 92, 140 (2); §§ 170, 177, 183; Second Class Cities Law § 103; Social Services Law § 40; Town Law § 64 (2); Transportation Law § 228; Village Law §§ 6-616, 11-1104, 15-1500, but not the Court of Claims Act.

. Decisions and selected orders of the New York State Court of Claims are available on the Internet at <http://www.nyscourtofclaims.state.ny.us>.